IN THE SUPREME COURT OF THE STATE OF DELAWARE

CAMTECH SCHOOL OF NURSING §
AND TECHNOLOGICAL SCIENCES, §
§ No. 91, 2014
Appellant Below- §
Appellant, § Court Below: Superior Court
§ of the State of Delaware,
v. § in and for New Castle County
§
DELAWARE BOARD OF NURSING, § C.A. No. N13A-05-004
§
Appellee Below- §
Appellee. §

Submitted: May 23, 2014
Decided: August 22, 2014

Before **STRINE,** Chief Justice, **HOLLAND**, and **RIDGELY**, Justices.

## *O R D E R*

On this 22nd day of August 2014, it appears to the Court that:

(1)     Appellant-Below/Appellant Camtech School of Nursing and Technological Sciences ("Camtech") appeals from a Superior Court Opinion and Order affirming the decision of the Delaware Board of Nursing (the "Nursing Board" or "Board") withdrawing state approval of Camtech's nursing education program. Camtech raises three claims on appeal. First, Camtech contends that the Board's revocation of its state approval violated procedural due process and Delaware law. Second, Camtech argues that the Board erred as a matter of law in its interpretation of "good cause" under Delaware law. Finally, Camtech argues

that the Board erred in its factual findings. We find no merit to Camtech's claims. Accordingly, we affirm.

(2) Camtech applied to the Nursing Board for approval of its nursing education program in August 2005. It obtained Phase I approval in September 2006, which allowed students to enroll at Camtech as it proceeded through Phase II. Camtech never completed Phase II of its program requirements and has never obtained Full Approval. On February 17, 2009, the Board informed Camtech that it would be placed on probation due, in part, to the inadequate pass rate of its graduates who took the National Counsel Licensure Exam ("NCLEX").

(3) In September 2012, while Camtech was still on probation, the Board notified Camtech that the Board intended to withdraw Camtech's state approval pursuant to 24 *Del. C.* § 1919(b). Camtech timely requested a hearing, which was held on November 14, 2012. At this hearing, Camtech presented testimony from its Director of Practical Nursing and its President. Camtech also submitted documentary evidence of its Proposed Corrective Plan of Action and related Appendix. At the conclusion of the initial hearing, the Board continued the matter until January 9, 2013, so that it could deliberate on the new evidence Camtech had submitted. At the January 9th hearing, the Board voted to withdraw approval of Camtech's Practical Nursing Program. Thereafter, Camtech submitted a Request for Reconsideration based, in part, on its most recent NCLEX pass rates.

2

(4)   On April 10, 2013, the Nursing Board issued an opinion and order explaining its decision to withdraw state approval.   The Board also denied Camtech's Request for Reconsideration in a separate order, finding that Camtech's NCLEX first-time pass rates were still inadequate.   Camtech appealed to the Superior Court, which affirmed the decision of the Board.[1]  This appeal followed.

(5)  This Court's review of an administrative agency's decision is the same as the Superior Court's.[2]  That is, we review the decision of the Nursing Board "to determine whether [it] acted within its statutory authority, whether it properly interpreted and applied the applicable law, whether it conducted a fair hearing and whether its decision is based on sufficient substantial evidence and is not arbitrary."[3]  Substantial evidence is defined as evidence that "a reasonable mind might accept as adequate to support a conclusion."[4]  Questions of law are reviewed *de novo*.[5]  But we also give judicial deference to "an administrative agency's construction of its own rules in recognition of its expertise in a given field."[6]  Thus,

---

[1] *Camtech Sch. of Nursing & Tech. Scis. v. Del. Bd. of Nursing*, 2014 WL 604980 (Del. Super. Ct. Jan. 31, 2014).

[2] *Kopicko v. State Dep't of Servs. for Children, Youth & their Families*, 846 A.2d 238, 2004 WL 691901, at *2 (Del. 2004).

[3] A*vallone v. State/Dep't of Health & Soc. Servs. (DHSS)*, 14 A.3d 566, 570 (Del. 2011) (alteration in original) (quoting *Hopson v. McGinnes*, 391 A.2d 187, 189 (Del. 1978)).

[4] *Stanford v. State Merit Emp. Relations Bd.*, 44 A.3d 923, 2012 WL 1549811, at *3 (Del. 2012) (quoting A*vallone*, 14 A.3d at 570).

[5] A*vallone*, 14 A.3d at 570 (citing *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[6] *Stanford*, 2012 WL 1549811, at *3 (quoting *Div. of Soc. Servs. v. Burns*, 438 A.2d 1227, 1229 (Del. 1981)).

an agency's interpretation of its own rules or regulation will only be reversed when it is "clearly wrong."[7]

(6) "In the exercise of quasi-judicial or adjudicatory administrative power, administrative hearings, like judicial proceedings, are governed by fundamental requirements of fairness which are the essence of due process, including fair notice of the scope of the proceedings and adherence of the agency to the stated scope of the proceedings."[8] As it relates to administrative proceedings, due process requires that the parties are given an "opportunity to be heard, by presenting testimony or otherwise, and the right of controverting, by proof, every material fact which bears on the question of right in the matter involved in an orderly proceeding appropriate to the nature of the hearing and adapted to meet its ends."[9] Appropriate notice "requires that the notice inform the party of the time, place, and date of the hearing and the subject matter of the proceedings."[10]

(7) The Delaware Code provides additional requirements that the Nursing Board must follow in order to withdraw state approval of a deficient nursing education program. The provision states:

> If the Board determines that any approved nursing education program is not maintaining the standards required by this

---

[7] *Id.* (quoting *Burns*, 438 A.2d at 1229).

[8] *Vincent v. E. Shore Markets*, 970 A.2d 160, 163–64 (Del. 2009) (quoting *Phillips v. Delhaize Am., Inc.*, 2007 WL 2122139, at *2 (Del. Super. Ct. July 20, 2007).

[9] *Id.* at 164 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[10] *Id.* (citing *Mathews*, 424 U.S. at 333).

4

chapter and by the Board, written notice thereof, specifying the deficiency and the time within which the same shall be corrected, shall immediately be given to the program. The Board shall withdraw such program's approval if it fails to correct the specified deficiency, and such nursing education program shall discontinue its operation; provided, however, that the Board shall grant a hearing to such program upon written application and extend the period for correcting specified deficiency upon good cause being shown.[11]

(8) Camtech argues that the Board failed to follow the prescribed procedure for withdrawing state approval. Camtech first alleges that the Board failed to provide written notification of its intention to withdraw state approval before February 2012. This argument is contradicted by the record. On February 17, 2009, the Board sent Camtech a letter explaining that Camtech was granted "continuing conditional approval (probation)" of its nursing education program, citing concerns with its NCLEX pass-rate.[12] Then in May 2009, the Board continued its conditional, probationary approval after receiving Camtech's improvement plan. And Camtech recognized the Board's concerns with its NCLEX passage rate, explaining that it was implementing "[a] plan for improving graduates' performance on the NCLEX-PN with measures of effectiveness of identified actions and a timeline for periodic re-evaluation."[13] In February 2012, following a January meeting of the Nursing Board, Camtech received written

---

[11] 24 *Del. C.* § 1919(b).
[12] Appellant's Op. Br. Appendix at A1–2.
[13] *Id.* at A4.

notice that the Board intended to withdraw its initial, conditional approval of Camtech's nursing education program. Then in September 2012, the Board fully delineated Camtech's deficiencies in its written notice to withdraw state approval. This was sufficient notice under the Delaware Code and does not violate notions of fundamental fairness.

(9) Camtech next argues that the Board failed to specify Camtech's deficiencies in a timely manner so that it could adequately correct them and continue its nursing education program. Again, the record demonstrates otherwise. The Board has continually informed Camtech since 2009 of its concern with regard to its nursing education program. Primary among these concerns has been Camtech's NCLEX passage rate. During this time, Camtech never achieved the eighty-percent threshold on the NCLEX passage rate mandated by state regulation.[14] The Board also identified other ongoing deficiencies in its September 2012 notice to withdraw state approval. Specifically, the Board noted that "Camtech's curriculum does not comply with the Board's requirements," citing concerns with its credit allocation and course structure as well as its lab facilities and clinical experiences.[15] Moreover, during this entire period, Camtech was on constructive notice of the Board's regulatory requirements for a nursing education

---

[14] 24 *Del. Admin. C.* § 1900-2.5.4.2.2.
[15] Appellant's Op. Br. Appendix at A30–33.

program, which are clearly laid out in the Delaware Administrative Code.[16]  The Board provided sufficient notice of Camtech's regulatory deficiencies.

(10)  Camtech next argues that the Board failed to fully consider Camtech's plan to restore the integrity of its nursing education program.  This is based on the claim that Camtech provided a large amount of documentary evidence to the Board in November 2012, and the Board issued its decision withdrawing state approval less than two months later.  Such an amount of time, according to Camtech, would have been insufficient to consider all of the pertinent evidence.  Camtech provides no legal support for this argument.  Moreover, there is nothing in the record to suggest that the Board's deliberations were insufficient to consider the evidence put before it.  Camtech's argument lacks merit.

(11)  Camtech next contends that the Board erred as a matter of law in its interpretation of the "good cause" requirement to permit Camtech's continued operations because its opinion was arbitrary and capricious.  As previously noted, the Nursing Board is permitted under Delaware statute to "extend the period for correcting [a] specified deficiency upon good cause being shown."[17]  The Delaware Administrative Code provides similar authority to the Board.[18]  Camtech

---

[16] *See* 24 *Del. Admin. C.* § 1900-2.5.4 (providing the bases for the denial or the withdrawal of initial approval of a nursing education program).

[17] 24 *Del. C.* § 1919(b).

[18] *See* 24 *Del. Admin. C.* § 1900-2.5.9.1.2 ("The Board shall grant a hearing to such program that make a written application and the Board shall extend the period for correcting specified deficiency upon good cause being shown.").

alleges that the Board has never articulated a definition of "good cause" or provided objective measures to satisfy good cause. But Camtech does not provide any authority for which an administrative agency is required to provide such a definition or objective measures. Nevertheless, "[s]tatutory interpretation is ultimately the responsibility of the courts."[19] And where a statute is clear, the plain language of the text controls.[20]

(12) The plain language of Section 1919(b)—as well as the regulation—provides the Nursing Board with discretion to determine the requirements of good cause. That is, if the Board finds that good cause has been shown, it has the discretion to extend the correction period. There is nothing in either the statute or the coordinating regulation that requires the Board to define "good cause" or provide objective measures to satisfy such a requirement. Thus, the Board in its discretion is free to decide what conduct is demonstrative of good cause—even on a case-by-case basis. Judicial review of the Board's decision will thus be for an abuse of that discretion.[21] "An agency abuses its discretion only where its decision has exceeded the bounds of reason under the circumstances."[22]

---

[19] *Pub. Water Supply Co. v. DiPasquale*, 735 A.2d 378, 382 (Del. 1999).

[20] *See LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932–33 (Del. 2007) ("An unambiguous statute precludes the need for judicial interpretation, and 'the plain meaning of the statutory language controls.'" (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999))).

[21] *See Sweeney v. Del. Dep't of Transp.*, 55 A.3d 337, 342 (Del. 2012) ("Absent an error of law, we review an agency's decision for abuse of discretion.").

[22] *Id.* (citing *Person-Gaines*, 981 A.2d at 1161).

(13)  Here, the Board did not abuse its discretion when it found that Camtech had not shown good cause as to why it should be permitted additional time to fix its deficiencies.  The Board placed Camtech on probation in 2009 because it was concerned with Camtech's NCLEX pass rate.  Then in 2012, the Board notified Camtech that it was programmatically deficient because it (1) had three consecutive years of substandard NCLEX passage rates, (2) failed to attain compliance with Board regulations, (3) failed to correct previously identified deficiencies, and (4) failed to obtain national accreditation.  In response, Camtech submitted a plan that sought to increase the NCLEX pass rate by limiting admittees, requiring NCLEX examination within ninety days of graduation, and partnering with a third party to conduct exam preparation services.  It also included other confusing and internally inconsistent remedial actions.

(14)  The Board found that Camtech's corrective action plan *in toto* failed to address the systemic deficiencies raised by the Board.  This was because increasing the qualifications for admittees merely would decrease the pool of exam takers rather than improve the quality of Camtech's nursing education program.  And stipulating that graduates must take the NCLEX within ninety days of graduation did not result in any measured success when such a regulation was in place from 2008 through 2010.  Finally, the Board found that Camtech's partnership with a third party, Assessment Technologies Institute Nursing Education, provided no

measurable objective to ensure improvement in its program or NCLEX pass rate. The NCLEX violation alone was sufficient for the Board to reject Camtech's state approval.[23] And the Board's decision that Camtech lacked good cause does not exceed the bounds of reason under the circumstances. Nor has Camtech presented any basis to conclude that this decision was arbitrary or capricious.[24] Thus, Camtech's second claim is without merit.

(15) Finally, Camtech claims in its Summary of Argument section and the header of its Argument section that the Board's factual findings are erroneous and not supported by substantial evidence in the record. But in the body of its Argument section, Camtech contends that (1) the Board failed to consider new evidence of its improved passage rate, (2) Camtech presented evidence to counter the Board's bases for withdrawal of state approval, and (3) the Board's decision was based on issues not raised during the proceedings.

(16) In *Roca v. E.I. du Pont de Nemours & Co.*, this Court explained: "It is well established that 'to assure consideration of an issue by the court, the appellant

---

[23] *See* 24 *Del. C.* § 1919(b) (requiring the Board to withdraw state approval of a program with a deficiency unless the program can show good cause to extend the period to correct the specified deficiency); 24 *Del. Admin. C.* § 1900-2.5.4.2.2 (providing that the Board may withdraw initial state approval where a program has three consecutive years of a NCLEX pass rate below eighty percent).

[24] *See Harmony Const., Inc. v. State Dep't of Transp.*, 668 A.2d 746, 750 (Del. Ch. 1995) ("'Arbitrary and capricious' is usually ascribed to action which is unreasonable or irrational, or in that which is unconsidered or which is wilful and not the result of a winnowing or sifting process. It means action taken without consideration of and in disregard of the facts and circumstances of the case . . . ." (omission in original) (quoting *Willdel Realty v. New Castle County*, 270 A.2d 174, 178 (Del. Ch. 1970))).

must both raise it in [the Summary of the Argument] and pursue it in the Argument portion of the brief.'"[25]  Supreme Court Rule 14 further provides that a brief must contain "[a] summary of argument, stating in separate numbered paragraphs the legal propositions upon which each side relies," and that the body of the brief shall state "the merits of the argument."[26]  But where "an appellant fails to comply with these requirements on a particular issue, the appellant has abandoned that issue on appeal irrespective of how well the issue was preserved at trial."[27]  Because the body of Camtech's brief differs drastically from the third claim raised in its Summary of Argument, we need not address that claim because it has been abandoned.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

/s/ Henry duPont Ridgely
Justice

---

[25] *Roca v. E.I. du Pont de Nemours & Co.*, 842 A.2d 1238, 1242 (Del. 2004) (alteration in original) (quoting Charles A. Wright et al., *Federal Practice and Procedure* § 3974.1, at 504–08 (1999 & Supp. 2003)).

[26] Del. Supr. Ct. R. 14(b)(iv), (vi)(A)(3).

[27] *Roca*, 842 A.2d at 1242 (citing *Turnbull v. Fink*, 644 A.2d 1322, 1324 (Del. 1994); *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993)); *see also* Del. Supr. Ct. R. 14(b)(vi)(A)(3) ("The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal.").