George W. SWEENEY, Appellant Below, Appellant,

v.

**DELAWARE DEPARTMENT OF TRANSPORTATION, Appellee Below, Appellee,**

and

**The Merit Employee Relations Board.**

No. 345, 2012.

Supreme Court of Delaware.

Submitted: Oct. 3, 2012.

Decided: Oct. 23, 2012.

---

Roy S. Shiels, Esquire, of Brown, Shiels & Beauregard, LLC, Dover, Delaware, for appellant.

Kevin R. Slattery, Esquire, of Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

JACOBS, Justice:

George W. Sweeney, appellant-below ("Sweeney"), appeals from a Superior Court order affirming a Merit Employee Relations Board ("MERB") order denying his appeal from the Delaware Department of Transportation's ("DelDOT") termination of his employment. While working as a Delaware government employee in a state government building, Sweeney made three postings on an internet forum about his personal political campaign. 29 *Del. C.* § 5954 mandates that any government employee who engages in "political activity" at work must be terminated from his employment. We AFFIRM that portion of

the Superior Court order determining that Section 5954 does not violate Sweeney's First Amendment right to free speech. We REVERSE and REMAND to the Superior Court for such further proceedings as may be appropriate to consider: (1) what constitutes "political activity" under Section 5954, and (2) whether Section 5954 is unconstitutionally overbroad or vague.

## FACTS AND PROCEDURAL BACKGROUND

In 2008, as a permanent merit employee at DelDOT, Sweeney was subject to the Merit Rules.[1] Merit Rule 15.3.2, which tracks 29 *Del. C.* § 5954(b), provides that "[n]o employee ... shall engage in any political activity or solicit any political contribution, assessment or subscription during his hours of employment or while engaged in the business of the State."[2] Merit Rule 15.3.4, tracking 29 *Del. C.* § 5954(d), mandates that "[a]ny officer or employee ... who violates any of the provisions in this section shall forfeit his office or position...."[3] In October 2008, Sweeney was a political candidate for the Kent County Levy Court. He used his government computer during work to make three postings to an internet forum (or a "blog") about the upcoming election and his candidacy. The postings stated:

> [T]his is about the election. My election is for Levy Court. In my race, I have a standard greeting for almost everyone I can get to come to the door. Let me put it out here for everyone to debate. I am the only candidate for this office who has lived here in Kent County for 48 years. I believe that my historical perspective is an asset in that it is good to know where we have been when making land use decisions about where we are going. I believe in "Infrastructure before Development," which is a nice catchphrase that everyone is using, but I also believe that you and I as taxpayers should never have our taxes increased to pay for new infrastructure. When these developers bring in all these homes, they should be paying for roads, schools, fire company [sic], and police improvements, not you and I as taxpayers. For example, Camden residents just had their property taxes increased, a tax increase that will pay for infrastructure. I am the only candidate who stood up in opposition to the Camden Comprehensive Plan that annexed that land, while my opponent was in favor of it, stating that it was good that the town was annexing farmland. I suppose he does not understand that the town is not interested in farmland and he does not know what they intend to do with it. I also opposed the latest annexation of 170 acres into Camden, where they plan to put 1200 homes. My opponent was at that meeting and sat there and said nothing. My opponent seems to forget that he represents more Camden residents than just those few who are involved in special interests.

> The Kent County Forum has this entry from today. As a candidate, you spend months making sure everyone knows where the problem is, who is behind it. Most of it is an attempt to general [sic] conversation with people you are talking to. Then the ideas start to formulate, somewhere around 60 days before the

---

1. *See* 29 *Del. C.* § 5903 (merit employee); *State of Delaware Merit Rules,* MERIT EMPLOYEE RELATIONS BOARD, http://delawarepersonnel.co m/mrules/documents/mrules_complete_073109.pdf (last visited Sept. 30, 2012) ("Merit Rules").

2. Merit Rule 15.3.2; 29 *Del. C.* § 5954(b).

3. Merit Rule 15.3.4; 29 *Del. C.* § 5954(d).

election, based on all the input from thousands of people talked to.

Mr. Edmanson [the opposing candidate] is self-serving and grandizing [sic]. He associates with special interests and thinks that when he is the lone vote that he stands out. Look at his campaign funding. Nearly $3,000 in donations from Development Special Interests, and it shows in his voting pattern. The residents of the 5th District need someone who understands where we have been; Someone with a history in the District; Someone who will represent them better on Levy Court, making new development come clean with funding for the infrastructure that is lagging so far behind. Sweeney.

As a result of those postings, Sweeney was charged with engaging in "political activity" prohibited under Section 5954, and he was terminated from his employment in July 2009. Sweeney appealed his termination to the MERB, which upheld his termination by order dated July 8, 2010.

On appeal to the Superior Court, Sweeney advanced three arguments. First, rather than being terminated under Section 5954, he should have been disciplined under the Merit Rules for violating Delaware's Department of Technology and Information's ("DTI") Acceptable Use Policy. Second, his termination was constitutionally infirm because Section 5954, as applied to Sweeney, violated his First Amendment right to free speech, and also is facially overbroad and vague. Third, in determining whether his postings constituted prohibited "political activity," the MERB should have interpreted "political activity"

with reference to 29 *Del. C.* § 2509A rather than the U.S. Office of Special Counsel's ("OSC") Advisory Opinion for establishing equivalent federal violations of the Hatch Act,[4] which prohibits federal employees from engaging in "political activities" while at work.[5]

Section 2509A defines "political activity" as:

[P]articipating in any activity in support of or in opposition to a political party or partisan candidate for public or political party office, including but not limited to writing or distributing statements in support of or in opposition to a candidate, initiating or circulating a partisan nominating petition, contributing money or anything of value to or for the benefit of a candidate, and soliciting votes of support for a candidate. "Political activity" does not include registering or voting in an election, or expressing opinions on political subjects or candidates.[6]

The OSC's Advisory Opinion sets forth three factors to be considered when deciding if an electronic message constitutes a "political activity": (1) the content of the message, (2) the message's audience (especially its size and relationship to the sender), and (3) whether the electronic message was sent either from a government building or when the sender-employee was on duty.

The Superior Court further concluded that Section 5954 did not violate Sweeney's First Amendment rights, because courts have frequently upheld the prohibition against employees engaging in political activities while at work or while on government property.[7] Government policies that

---

4. 5 U.S.C. §§ 7321–7326.

5. *Id.*

6. 29 *Del. C.* § 2509A(e)(3).

7. *Sweeney v. Del. Dep't of Transp.*, C.A. No. K10A–08–002, 2012 WL 1995781, at *3 (Del.Super. May 25, 2012) (citing *James v. Tex. Collin Cnty.*, 535 F.3d 365 (5th Cir. 2008)).

restrict employees' political activities at work have been held to satisfy the United States Supreme Court's balancing test in *Pickering v. Board of Education,*[8] because the government has a strong interest in maintaining a nonpartisan civil service.[9] The Superior Court determined that because Section 5954 is "viewpoint neutral" and does not extend beyond regulating employees' political activities at work, the statute did not violate Sweeney's First Amendment rights.[10]

The Superior Court further ruled that Section 5954 was not unconstitutionally overbroad, because that provision did not prohibit an employee's political activities outside of work.[11] Nor was Section 5954 impermissibly vague.[12] Although the term "political activity" was "subject to some degree of interpretation," the statute expressly prohibited the type of political campaigning in which Sweeney had engaged.[13]

Finally, the Superior Court noted that the meaning of "political activity" in Section 5954 was an issue of first impression in this state. Holding that the statute was modeled after the federal Hatch Act, the court ruled that the MERB properly applied the OSC's test to interpret the meaning and scope of "political activity" under Section 5954.[14] Although Sweeney argued that the MERB should have interpreted Section 5954 with reference to Section 2509A, the Superior Court did not address that argument, because it held that the MERB never relied on Section 2509A in its decision and order.[15]

On May 25, 2012, the Superior Court affirmed the MERB's order terminating Sweeney's employment.[16] This appeal followed.

## ANALYSIS

On appeal from a Superior Court ruling that, in turn, has reviewed a ruling of an administrative agency, this Court reviews the agency's decision directly to determine whether it is supported by substantial evidence and is free from legal error.[17] Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[18] This Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[19] We

8. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

9. *Sweeney*, 2012 WL 1995781, at *3–4 (citing *James*, 535 F.3d at 379–80).

10. *Id.* at *4.

11. *Id.*

12. *Id.*

13. *Sweeney v. Del. Dep't of Transp.*, C.A. No. K10A–08–002, 2012 WL 1995781, at *4 (Del.Super. May 25, 2012).

14. *Id.* at *4–5.

15. *Id.* at *4 n. 20 ("The Board did not rely on [Section 2509A].... [Sweeney] argued that the language of that statute should be relied upon in determining the meaning of 'political activity' under Section 5954. The Board did not adopt [Sweeney's] construction. The Board did not rely upon Section 2509A in the order. Therefore, the Court will not address [Sweeney's] challenge of the statute on appeal.").

16. *Id.* at *5.

17. *Pub. Water Supply Co. v. DiPasquale*, 735 A.2d 378, 380–81 (Del.1999); *Olney v. Cooch*, 425 A.2d 610, 613 (Del.1981); *UIAB v. Duncan*, 337 A.2d 308, 308–09 (Del.1975).

18. *Olney*, 425 A.2d at 614.

19. *Person–Gaines v. Pepco Hldgs., Inc.*, 981 A.2d 1159, 1161 (Del.2009).

review questions of law and statutory interpretation *de novo*.[20] Absent an error of law, we review an agency's decision for abuse of discretion.[21] An agency abuses its discretion only where its decision has exceeded the bounds of reason under the circumstances.[22]

On appeal, Sweeney advances three basic claims. *First*, he argues that he should have been subject to discipline (if at all) under the Merit Rules, not Section 5954. Alternatively, in determining whether his postings constituted a "political activity" under Section 5954, the MERB should have defined "political activity" with reference to Section 2509A, and not the Hatch Act. *Second*, Sweeney claims that Section 5954 is unconstitutionally overbroad and vague. *Third*, he urges that the First Amendment protects his political postings because they did not relate to his employment. Therefore, (Sweeney argues,) the MERB should have held that Section 5954 was impermissible "content-based" legislation and, as such, unable to survive strict scrutiny review.[23]

## I. What Constitutes "Political Activity" Under Section 5954

■ Merit Rule 1.2 provides that in the event of a conflict, Section 5954 of the Delaware Code trumps the Merit Rules.[24] The MERB therefore correctly evaluated Sweeney's conduct under Section 5954, rather than under the Merit Rules.

As for whether Sweeney engaged in "political activity" under Section 5954, the MERB determined the meaning of "political activity" using the OSC's three-factor test for evaluating comparable violations of the federal Hatch Act. The Superior Court approved of the MERB's adoption of the OSC three-factor standard. On appeal, Sweeney continues to "take[ ] issue with" the MERB and Superior Court's adoption of the OSC standard.

We note that the OSC rescinded its three-factor standard in March 2007—19 months before Sweeney's offenses, which occurred in October 2008.[25] This Court reviews questions of law and statutory interpretation *de novo*. Although neither the parties nor the tribunals addressed the significance of the OSC rescission on ap-

**20.** *Id.; Doroshow, Pasquale v. Nanticoke Mem. Hosp., Inc.*, 36 A.3d 336, 342 (Del. 2012).

**21.** *Person–Gaines*, 981 A.2d at 1161.

**22.** *Id.* (quotation omitted).

**23.** *See Brown v. Entm't Merchs. Ass'n*, —— U.S. ——, 131 S.Ct. 2729, 2738, 180 L.Ed.2d 708 (2011) (applying "strict scrutiny" review to content-based legislation, in which the challenged legislation must be justified by a "compelling government interest and [be] narrowly drawn to serve that interest"). Sweeney also claims that, alternatively, if Section 5954 is "content-neutral," then the "intermediate scrutiny" standard should apply. *See Holder v. Humanitarian Law Project*, —— U.S. ——, 130 S.Ct. 2705, 2723, 177 L.Ed.2d 355 (2010) (reiterating that a content-neutral regulation is subject to intermediate scrutiny,

where the challenged regulation is assessed to determine if it "advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests"). Sweeney did not, however, raise that claim before the Superior Court. Therefore, his intermediate scrutiny argument is waived on appeal. *See Smith v. Del. State Univ.*, 47 A.3d 472, 479 (Del.2012) (citing Supreme Court Rule 8).

**24.** 19 *Del. Admin. C.* § 3001–1.2 ("In the event of conflict with [the MERB and] the Delaware Code, the Code governs.").

**25.** Loren Smith, *OSC Removes Hatch Act Advisory for "Water Cooler" Political Email*, U.S. Office of Special Counsel, http://www.osc.gov/documents/press/2007/pr07_06.htm (last visited Sept. 30, 2012) (OSC Press Release) (released on Mar. 14, 2007).

peal, it is manifest that the Superior Court and the MERB applied a no-longer-applicable legal standard in determining what constitutes "political activity" under Section 5954. For that reason, a remand to the Superior Court is required so that the court can consider the legal significance and consequences of that event.

Sweeney argues that under Section 2509A, his postings were permissible expressions of his political opinion; therefore, they did not constitute prohibited "political activity" under Section 5954.[26] The MERB disagreed. It held that Sweeney's postings were prohibited "statements in support of or in opposition to a candidate" under Section 2509A, although the agency made no reference to Section 2509A in its order. The Superior Court held that because the MERB did not rely on Section 2509A, the court was not required to address Sweeney's claim that Section 2509A should be part of the analysis utilized to determine what constitutes "political activity" under Section 5954.[27]

We conclude that whether or not Section 2509A is found to be the appropriate test for defining "political activity" under Section 5954, the Superior Court erred by not considering Sweeney's Section 2509A argument. Although the MERB did not adopt that test in its statutory analysis, Sweeney properly raised his Section 2509A claim before both the MERB and the Superior Court. That court should therefore have addressed the Section 2509A claim. Be-

cause both the MERB and the Superior Court relied on the rescinded OSC three-factor standard, and the Superior Court erred in declining to address Sweeney's Section 2509A claim, we reverse and remand to the Superior Court for such further proceedings as may be appropriate to determine what constitutes a "political activity" under Section 5954.

## II. Whether Section 5954 is Unconstitutionally Overbroad or Vague

Sweeney's next claim's that Section 5954 is constitutionally overbroad, because that statute allegedly prohibits not only "political activities," but also protected "political speech." In addition, he argues that the statute is impermissibly vague, because a reasonably intelligent person would not be on notice of what type of conduct is prohibited. To decide this issue necessarily requires establishing first what constitutes a "political activity" under Section 5954. Accordingly, this issue must be addressed by the Superior Court (and, if legally required, the MERB) in the first instance.

## III. Whether the First Amendment Protects Sweeney's Statements

█ Lastly, Sweeney argues that because his political postings were unrelated to his employment, they were constitutionally protected free speech. Sweeney's argument is unpersuasive. The Superior Court properly held that because Sweeney had made his political postings while working on government property, the First

---

**26.** In his corrected opening brief, Sweeney states that he "takes issue with the [MERB's] analytical process" that rejected his Section 2509A argument for the OSC's Advisory Opinion. Sweeney's ambiguous language makes it unclear whether he intended to raise his Section 2509A claim on appeal. We have, however, given Sweeney the benefit of the doubt, in light of his later assertion that the MERB and the Superior Court:

[E]rred in allowing construction of the undefined terms "political activity" to be

based on a later issued federal interpretation of a federal statute [presumably the OSC's Advisory Opinion on the Hatch Act], rather than construing a State statute [presumably Section 5954] by coordinating any claimed internal inconsistencies in a related State statute [presumably Section 2509A].

**27.** *Sweeney v. Del. Dep't of Transp.,* C.A. No. K10A–08–002, 2012 WL 1995781, at *4 n. 20 (Del.Super. May 25, 2012).

Amendment did not insulate him from the regulatory reach of Section 5954.[28] That statute is "viewpoint neutral," and does not regulate beyond Sweeney's political activities at work. It is settled law that the government's interest in maintaining a nonpartisan civil service outweighs Sweeney's interest in making political postings while working on government property.[29] We affirm the Superior Court's ruling that Section 5954's prohibition on "political activity"—however that language is ultimately construed—does not violate Sweeney's First Amendment rights. As a result, Sweeney's remaining arguments (that Section 5954 should be subject to strict scrutiny, and that the statute does not pass strict scrutiny review) are moot.

## CONCLUSION

For the reasons stated above, we AFFIRM that portion of the Superior Court order determining that Section 5954 does not violate Sweeney's First Amendment right to free speech. We REVERSE and REMAND to the Superior Court for such further proceedings as may be appropriate to consider: (1) what constitutes "political activity" under Section 5954, and (2) whether Section 5954 is unconstitutionally overbroad or vague. Jurisdiction is not retained.

**28.** *Id.* at *3.

**29.** *See Waters v. Churchill,* 511 U.S. 661, 671–72, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (adopting the premise that the First Amendment right to free speech is not absolute for government employees); *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 563–67, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (holding that political activities of federal government employees may be prohibited under the Hatch Act, because "it is essential that federal employees . . . not take formal positions in political parties, not undertake to play substantial roles in partisan political campaigns, and not run for office on partisan political tickets. Forbidding activities like these will reduce the hazards to fair and effective government."); *James v. Tex. Collin Cnty.,* 535 F.3d 365, 379–80 (5th Cir.2008) (summarizing several U.S. Supreme Court and circuit cases holding that the Hatch Act can properly prohibit government employees from conducting political activities in government buildings).