# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DELAWARE AUDUBON and )
LEAGUE OF WOMEN VOTERS OF )
DELAWARE )
　 )
　 )
Appellants, )
　 )
v. )　　　　　C.A. No. N17A-03-007 DCS
　 )
DELAWARE DEPARTMENT OF )
NATURAL RESOURCES AND )
ENVIRONMENTAL CONTROL and )
DELAWARE CITY REFINING )
COMPANY, LLC, )
　 )
　 )
Appellees. )

Submitted: December 13, 2017
Decided: January 19, 2018

*Upon Appeal from the Coastal Zone Industrial Control Board –*

**REMANDED**.

## Introduction

Appellants Delaware Audubon ("Audubon") and League of Women Voters of Delaware ("League of Women Voters") (collectively, "Appellants") have appealed the Coastal Zone Industrial Control Board's decision, which dismissed, on the basis of standing, their appeal of a Department of Natural Resources and Environmental Control ("DNREC") permit. Their appeal challenged a permit granted to the Delaware City Refining Company, LLC (the "Refinery" or "Appellee") by DNREC to "utilize existing tank and existing marine loading equipment at [the Refinery's] existing facilities [in] Delaware City to enable denatured ethanol to be loaded from storage tanks to marine vessels and shipped to offsite facilities[1]" and authorized the shipment of up to 10,000 barrels of ethanol per day (the "Permit").

On appeal to this Court, Appellants assert that an increase in air pollution, noise pollution, infringement on recreational enjoyment, and risk of explosion are all injuries in fact that result from the issuance of the Permit and can be redressed by the Coastal Zone Industrial Board (the "Board").

---

[1] R. at Tab 27, Decision and Final Order on Appeal No. CZ-2017-01 at 2 (March 15, 2017) (hereinafter, "Board Opinion").

1

Appellee asserts that the Board correctly dismissed Appellants' appeal below on standing grounds because Appellants did not show that their alleged injuries in fact resulted from the issuance of the Permit.

For the reasons set forth below, the matter is **REMANDED.**

### Factual and Procedural Background

On August 19, 2016, the Refinery submitted to DNREC an application for a Coastal Zone Act ("CZA") permit. The Refinery's application sought approval for its "Ethanol Marketing Project" which involved "the loading of ethanol on to marine vessels at the existing piers to ship to off-site locations, to the extent consistent with market conditions. Ethanol throughput at the piers will be up to 10,000 barrels per day ("BPD") on an annual average basis."[2] The application stated that the permit would "not result in change in production at the Refinery"[3] or "alter the current typical operating schedule."[4]

On October 26, 2016, Robert P. Haynes, the Hearing Officer of DNREC, conducted a public hearing on the CZA application. On December 27, 2016, the Hearing Officer submitted a report to the Honorable David S. Small, Secretary of

---

[2] R. at Tab 2a, Application for a Coastal Zone Permit at 6 (August 19, 2016) (hereinafter, the "Application").

[3] Application at 11.

[4] Application at 12. The application also stated that: "The current operating schedule will continue to be 24 hours a day, 7 days a week, 52 weeks a year."

DNREC in support of the application. That same day, the Secretary issued Order No. 2016-CZ-0050 ("Secretary's Order") which granted the Permit to Refinery.[5]

On January 17, 2017, Appellants filed an appeal to the Board which challenged DNREC's authorization of the Permit and alleged seven counts of CZA violations. On February 22, 2017, the Board held a final pre-hearing conference and decided that the evidentiary hearing would first proceed on the issue of whether Appellants had standing to bring their appeal.

On February 27, 2017, the Board conducted its evidentiary hearing on standing ("Board Hearing").[6] Appellants presented the testimony of Matthew Del Pizzo, the current of President of Audubon; David Carter, a member of Audubon and League of Women Voters; and Mark B. Martell, a member of Audubon's board. Appellants also introduced the affidavit of Mr. Del Pizzo and the affidavit of Jill Fuchs, the current President of the League of Women Voters. The Board also accepted a "Chronology" that consisted of the complete record that the Secretary considered before issuing the Secretary's Order. Additionally, the Board considered

---

[5] R. at Tab 2n, Secretary's Order No. 2016-CZ-0050 at 8 (Dec. 17, 2016) ("Accordingly, the Department finds and concludes that the record supports approval of the Application because it complies with the CZA and the CZA Regulations and supports the requested expansion or extension of use of a nonconforming use(s)").

[6] DNREC did not participate in proceedings concerning the issue of standing. R. at Tab 26, Transcript of Board Hearing at 30 (Feb. 27, 2017) (hereinafter "Hr. Tr.").

a "Joint Final Pre-Hearing Order" that included stipulated facts agreed to by all parties.[7]

Matthew Del Pizzo testified concerning his recreational enjoyment of Delaware City. He stated that he would not frequent Delaware City and its restaurants when barges were offloading because the fumes "take[] away from the enjoyment of the leisure, you know, eating and enjoying the waterfront."[8] He further testified that "we wouldn't release a bird during that period with all the fumes and things that come with that."[9] Upon further inquiry, Del Pizzo elaborated that, "Well, they have had to clear the deck when they have had incidents at the barge. Because people, I believe, were sent or taken to a hospital from exposures to what happened there."[10]

David B. Carter, a member of Audubon and League of Women Voters, testified that "there is always in the back of your mind concern over a possible spill. I have responded to many of these as a professional."[11] "There is always the constant

---

[7] The parties essentially stipulated that the Permit would not increase the number of train cars that the Refinery could receive for unloading cargo or the Refinery's capacity to load/unload or otherwise accommodate marine vessels at the docking facility. They also stipulated that activity will generate air and noise pollution. R. at Tab 22, Joint Final Pre-Hearing Order at 7 (Feb. 27, 2017) (hereinafter, "Joint Final Pre-Hearing Order").

[8] Hr. Tr. at 24.

[9] Hr. Tr. at 24.

[10] Hr. Tr. at 38.

[11] Hr. Tr. at 57.

concern of explosion, which, in particular, for something like deconal [sic],[12] which is highly flammable, much more flammable than gas."[13] He also testified that "my mother still lives in the house I grew up in in New Castle" and that "it's an added stress for me. You know, if there is an explosion, if there is a rescue delay that we can't get there, it bothers me a lot."[14] He further stated, "I have had enjoyment of this coastal zone. I have, since I was a child, and even more so now that I am retired, I recreate and use this area."[15] Carter added that he recreated in the area through duck hunting, kayaking, and nature photography.[16] He also said that he avoids eating at Crabby Dick's restaurant because "diesel has always bothered me" and "[i]t actually makes me nauseous to smell those fumes."[17]

Mark Martell, a board member of Audubon, testified that he lived "within the blast radius of the Refinery . . ."[18] He stated that he hears trains going into and out of the Refinery "at all hours."[19] Martell also testified that he and his wife no longer gardened because of diesel fumes and the "atmosphere around our home and what

---

[12] Board Member Pamela Meitner, Esq. wrote in her dissenting opinion that "deconal" is an error and should be "ethanol".
[13] Hr. Tr. at 57.
[14] Hr. Tr. at 71.
[15] Hr. Tr. at 47.
[16] Hr. Tr. at 48, 49, 50.
[17] Hr. Tr. at 22.
[18] Hr. Tr. at 87.
[19] Hr. Tr. at 88.

was coming down."[20] Appellee did not present any witnesses and moved to dismiss the appeal.

After closing arguments and off the record deliberations, the Board returned and voted to grant Appellee's motion to dismiss. Four Board members voted in favor of dismissing the appeal; one Board member voted against.

On March 16, 2017, the Board issued its written Decision and Final Order ("Board Opinion") memorializing its dismissal of Appellant's appeal on standing grounds.[21] The Board concluded that:

> All of the "injuries" complained of by the members related to the Refinery's current operations and were not connected, or otherwise traceable, to activities authorized under the Permit, namely the transshipment of ethanol. Although Appellants argued that as a result of the Permit an increase in rail and/or barge traffic is "self-evident," the Board heard no evidence that such traffic will increase due to activities authorized under the Permit.

The Board also noted that because "none of the three members of Appellants met the 'individual standing' requirement for organizational standing, the Board finds it unnecessary to analyze the other two requirements."[22]

---

[20] Hr. Tr. at 92.

[21] Board member Pamela Meitner, Esq. issued a dissenting opinion dated March 15, 2017.

[22] Board Opinion at 24, n. 31.

## Parties' Contentions

On October 18, 2017, Appellants filed their Opening Brief. Appellants contend that "[t]he injury in fact arises from the air pollution, noise, and recreational impacts caused by trains and marine vessels bringing ethanol to and shipping ethanol from the Refinery"[23] and that those injuries will increase as a result of the Permit.

On November 2, 2017, Max B. Walton, Esq. filed a letter of non-participation on behalf of DNREC. He stated that DNREC took no position on standing before the Board and that DNREC did not take a position on appeal before this Court.[24] DNREC did not file a brief in response to Appellants' Opening Brief.

On November 7, 2017, Appellee filed its Answering Brief. Appellee contends that Appellants did not meet their burden of proof on the causation element of standing because the "alleged harms relate to pre-existing activities"[25] and were present before the Secretary issued the Permit. Appellee further contends that Appellants did not produce factual evidence supporting the claim that any asserted injuries will increase as a result of the Permit.[26]

On November 21, 2017, Appellants filed their Reply Brief. Appellants reiterated their previously asserted concerns and argued that "[t]he increased

---

[23] Op. Br. at 27.
[24] Ltr. to the Court from Max B. Walton, Esquire.
[25] Ans. Br. at 7.
[26] Ans. Br. at 21.

explosion risk created by more ethanol on the River under the Permit also creates injury-in-fact."[27]

## Standard of Review

This Court has jurisdiction over appeals from administrative agencies which includes appeals from the Board.[28] The issue before this Court is whether Appellants had standing to appeal the Secretary's Order to the Board. A review of standing presents a mixed question of law and fact.[29] Standing is conferred by statute, and whether the Board correctly interpreted the applicable standing provision is a question of law which this Court reviews *de novo*.[30] This Court reviews the Board's factual findings to determine whether such findings are supported by substantial evidence from the record below.[31] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32]

In reviewing an appeal of a Coastal Zone Industrial Control Board decision, the Court determines whether the Board "acted within its statutory authority, whether it properly interpreted and applied the applicable law, whether it conducted a fair hearing, and whether its decision is based on sufficient substantial evidence

---

[27] Reply Br. at 16.
[28] 7 *Del. C.* § 7008.
[29] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892 (1994).
[30] *Nichols v. State Coastal Zone Indus. Control Bd.*, 2013 WL 1092205, at *2 (Del. Super. Mar. 14, 2013).
[31] *Id.*
[32] *Sweeney v. Del. Dep't of Transp.*, 55 A.3d 337, 341 (Del. 2012).

8

and is not arbitrary."[33] The Court does not "reweigh the evidence, determine issues of credibility, or draw [its] own factual conclusions."[34] A Board decision that is supported by substantial evidence and is free from legal error will be affirmed unless the Court finds that the Board has abused its discretion.[35] An abuse of discretion occurs "where [the Board's] decision has exceeded the bounds of reason under the circumstances."[36]

## Discussion

Standing is derived from the law governing a litigant's claim. It is settled law that "no party has a right to appeal unless the statute governing the matter has conferred a right to do so."[37] Here, Appellants brought their claim to the Board under the Coastal Zone Act.

7 *Del. C.* § 7007(b) of the Coastal Zone Act provides:

> Any person aggrieved by a final decision of the Secretary of the Department of Natural Resources and Environmental Control under § 7005(a) or § 7014 of this title may appeal same under this section. Appellants must file notice of appeal with the State Coastal Zone Industrial Control Board within 14 days following announcement by the Secretary of the Department of Natural Resources and Environmental Control of his or her decision. The State

---

[33] *Avallone v. Del. Dep't of Health & Soc. Servs.*, 14 A.3d 566, 570 (Del. 2011) (internal quotation marks omitted) (quoting *Hopson v. McGinnes*, 391 A.2d 187, 189 (Del. 1978)). *See also Christman v. Del. Dep't of Health & Soc. Servs.*, 2014 WL 3724215, *2 (Del. July 25, 2014).

[34] *Norcisa v. Dep't of Health & Soc. Servs.*, 2014 WL 1258304, at *3 (Del. Mar. 25, 2014).

[35] *Id.* at 341-42. *See also Banner v. State of Del. Emp. Relations Bd.*, 2015 WL 5073740, at *1 (Del. Aug. 26, 2015).

[36] *Sweeney v. Del. Dep't of Transp.*, 55 A.3d at 342.

[37] *Oceanport*, 636 A.2d 892, 900 (Del. 1994).

Coastal Zone Industrial Control Board must hold a hearing and render its decision in the form of a final order within 60 days following receipt of the appeal notification.

The party invoking the jurisdiction of a tribunal bears the burden of establishing standing.[38] Because Appellants are organizations, they bear the burden of proving that "1) the interests to be protected by the suit are germane to the organization's purpose; and 2) neither the claim asserted nor the relief requested requires the participation of individual members; and 3) the organization's members would otherwise have standing."[39] The organization's members would otherwise have standing if individual members suffered an injury in fact that is concrete and particularized, either actual or imminent, there is a causal connection between the injury and the conduct where the injury is fairly traceable to the illegal conduct, and the injury is capable of being redressed by a favorable decision of the tribunal. [40]

The Board concluded that "[a]ll of the 'injuries' complained of by the members related to the Refinery's current operations and were not connected, or otherwise traceable, to activities authorized under the Permit, namely the transshipment of ethanol."[41] The Board Opinion focused on the issue of increased

---

[38] *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1109 (2003).

[39] *Oceanport*, 636 A.2d at 902.

[40] *Dover Historical Soc'y*, 838 A.2d at 1110-11 ("This Court has recognized that the *Lujan* requirements for establishing standing under Article III to bring an action in federal court are generally the same as the standards for determining standing to bring a case or controversy within the courts of Delaware").

[41] Board Opinion at 24.

activity (number of train cars and capacity to accommodate marine vessels). The Board held that barge and rail activity would not increase and, therefore, redress was impossible. The Board did not address the "expansion or extension of non-conforming uses"[42] in relation to the number of ethanol barrels shipped per day, whether any change (or increase) in the quantity of ethanol barrels per day could or would increase the risk (and fear) of explosion in view of the flammable nature of that substance[43] or whether any increased risk could be redressed.

Consequently, the record is incomplete as to the basis for the Board's conclusion that "[n]o evidence was presented that showed the members' "injuries" would be any worse, or any different, or occur more frequently if the Permit were granted."[44] Therefore, the Court will remand the matter to the Board to address any evidence concerning increased quantities per day of ethanol, flammability of ethanol, possible members' injuries, and whether possible members' injuries would be worse, different, or occur more frequently if the Permit were granted.[45]

---

[42] 7 *Del. C.* § 7004(a) ("All expansion or extension of non-conforming uses . . .[are] allowed only by permits"); Secretary's Order at 8.

[43] Appellants presented testimony that "the Refinery is currently using 2,000 barrels per day ... and the Permit authorizes the Refinery to include shipment of ethanol beyond existing refinery operations" Board Opinion at 20. The Board accepted the testimony as part of its findings of fact. Board Opinion at 23.

[44] Board Opinion at 24. The Secretary's Order found that "the Project represents an operational expansion." Secretary's Order at 5.

[45] *See Pepsi Bottling Grp. v. Meadow*, 2009 WL 3532274, at *4 (Del. Super. Aug. 28, 2009) ("When an administrative body has failed to develop a complete record sufficient for this Court's review, the Court 'shall remand the case to the agency for further proceedings on the record").

11

## Conclusion

Accordingly, the matter is hereby **REMANDED** to the Board consistent with this decision.

**IT IS SO ORDERED**.

_____
Diane Clarke Streett, Judge

Original to Prothonotary

cc:   Kenneth T. Kristl, Esquire
Joseph C. Schoell, Esquire
Bart E. Cassidy, Esquire, *pro hac vice*
Katherine L. Vaccaro, Esquire, *pro hac vice*
Matthew F. Boyer, Esquire
Lauren DeLuca, Esquire