## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN H. RIPPLE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N21A-05-002 PRW |
| | ) | |
| DELAWARE BOARD OF | ) | |
| NURSING, | ) | |
| Appellee. | ) | |

Submitted: June 9, 2022
Decided: July 27, 2022

## <u>ORDER</u>

*Upon Appeal from the Delaware Board of Nursing,*
**AFFIRMED.**

This 27th day of July, 2022, upon the parties' briefs and submissions and the record below, it appears to the Court that:

(1)     John H. Ripple appeals the Delaware Board of Nursing's (the Board) April 14, 2021 Final Board Order.[1]  The Board's Order is a public disciplinary action reprimanding Mr. Ripple for failing to timely report his criminal arrests as required by 24 *Del. C.* §§ 1922(a)(11) and 1930A.[2]  Among other things, Mr. Ripple argues

---

[1]   Not. of Appeal, *Ripple v. Delaware Bd. of Nursing*, N21A-05-002 PRW, May 11, 2021 (D.I. 1).

[2]   Record and Transcript, Tab 1 ("Final Board Order"), *Ripple v. Delaware Bd. of Nursing*, N21A-05-002 PRW, Sept. 17, 2021 (D.I. 9); *see also* DEL. CODE ANN. tit. 24, § 1922(a)(11) (2019) (providing that the Board of Nursing may impose disciplinary sanctions for certain offenses by

that the Board abused its discretion in concluding that he failed to timely comply with certain reporting requirements imposed on him as a nursing license holder.[3]

(2)    The Court's review of the Board's decision here is governed by statute. Under Delaware's Administrative Procedure Act, in Nursing Board action, "[a]ny party against whom a case decision has been decided may appeal such decision to th[is] Court."[4]  Upon a timely appeal and a record sufficient for review:

> The Court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted. The Court's review, in the absence of actual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency.[5]

The Court does not "'weigh evidence, determine credibility, or make its own factual findings,' it merely determines if the evidence is legally sufficient to support the agency's factual findings."[6]  And if there is no mistake of law and there is substantial evidence to support the decision, the Board's decision will be affirmed.[7]

---

licensees); DEL. CODE ANN. tit. 24, § 1930A (2019) (prescribing a nursing licensee's duty to self-report).

[3]    Not. of Appeal at 2-3.

[4]    DEL. CODE ANN. tit. 29, § 10142(a) (2022).

[5]    *Id.* § 10142(b)-(d).

[6]    *Kearney v. New Roads*, 2003 WL 1563722, at *1 (Del. Super. Ct. Mar. 25, 2003) (quoting *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

[7]    *Longobardi v. Unemployment Ins. Appeal Bd.*, 287 A.2d 690, 693 (Del. Super. Ct. 1971), *aff'd*, 293 A.2d 295 (Del. 1972); *Boughton v. Div. of Unemployment Ins. of Dep't of Labor*, 300 A.2d 25, 26-27 (Del. Super. Ct. 1972).

(3)     Under 24 *Del. C.* § 1901, the Delaware Board of Nursing has broad statutory powers over the "the general administration and supervision of the education, examination, licensing and regulation of professional and practical nursing."[8]  The Board is also responsible for imposing disciplinary action upon a determination that a licensee has violated one or more of the enumerated statutory or regulatory offenses.[9]  Relatedly, a licensee has a statutory duty to self-report to the Board any criminal indictment, arrest, conviction, and/or guilty plea within thirty (30) days of such event.[10]  Failure to do so constitutes grounds for discipline.[11]

(4)     Mr. Ripple has been a Delaware Board-licensed registered nurse since 2016.[12]  As a result of his 2019 criminal arrest and failure to timely report the same under 24 *Del. C.* § 1922(a)(11), the Board imposed the sanctions he now appeals here.

## MR. RIPPLE'S CRIMINAL ARREST AND CHARGES

(5)     On April 24, 2019, Mr. Ripple was arrested in connection with discharging a firearm in a residential area.[13]  Upset over domestic-related stresses

---

[8]     DEL. CODE ANN. tit. 24, § 1901 (2022) (Declaration of legislative intent).

[9]     *Id.* § 1922(a).

[10]    *Id.* § 1930A.

[11]    *Id.* § 1930A(c).

[12]    Record and Transcript, Tab 4, Licensure Hearing Tr. at 44 (hereafter "Hr'g Tr.").

[13]    *Id.*, Tab 5, State's Exs. 1-2 (Arrest Record and Police Reports).

and child visitation efforts, Mr. Ripple sought comfort from a co-worker and friend.[14] It was during this exchange that Mr. Ripple communicated suicidal ideations, aimed a rifle at his mouth, and ultimately fired the weapon at the ground.[15] Police arrived soon thereafter but Mr. Ripple had already taken off with the weapon and spent the rest of the night "crawling though creeks" to avoid police detection.[16] He was taken into police custody the following morning and transported to the Veterans Affairs (VA) Hospital for treatment.[17]

(6)     Mr. Ripple was charged with one count each of "Breach of Release" and "Discharging a Firearm in the Area of an Occupied Dwelling."[18] After being charged, Mr. Ripple submitted to extensive voluntary therapy and psychological treatment for his post-traumatic stress disorder (PTSD) diagnosis.[19] In July of 2019, Mr. Ripple entered into a diversion program via this Court's Veterans Treatment

---

[14]  *Id.* at 169-71.

[15]  *Id.* at 176-79, 181-88.

[16]  *Id.* at 238.

[17]  *Id.* at 303-07.

[18]  Record and Transcript, Tab 5, State's Ex. 4.

[19]  *Id.*, Tab 3, Chief Hearing Officer Recommendation at 28 (hereafter "Hr'g Officer Rec."); *see also id.*, Tab 4, Hr'g Tr. at 20-21, 307-10.

Court.[20] Mr. Ripple successfully completed the program and ultimately the two criminal charges against him were dismissed.[21]

## DISCIPLINARY ACTION FOR
## FAILING TO REPORT CRIMINAL CHARGES

(7) In August of 2019, Mr. Ripple sought direct assistance from the Board with his nursing license renewal because his independent, online attempts resulted in an "automatic hold" on his application.[22] He was informed that because he affirmatively answered that he had picked up criminal charges since his last renewal, the online renewal platform placed his application on hold until he submitted copies of his criminal history record.[23] Mr. Ripple thereafter submitted a copy of a state-conducted criminal background check and the hold on his license renewal was released.[24]

(8) In both April and August of 2019, an investigator with the Delaware Division of Professional Regulation (DPR) received notice of Mr. Ripple's arrest

---

[20] *See id.*, Tab 5, State's Ex. 3 (Veteran's Treatment Court Agreement); *see also State v. John H. Ripple*, Crim. ID. Nos. 1904014759, 1904014583 (Del. Super. Ct.).

[21] Dismissal Order, *State v. John H. Ripple*, Crim. ID. Nos. 1904014759, 1904014583 (Del. Super. Ct. Mar. 6, 2020) (D.I. 6); *see also* Record & Transcript, Tab 5, State's Ex. 6.

[22] Hr'g Tr. at 73-82.

[23] *Id.* at 85-86. The license renewal form requires a licensee to confirm: (i) his understanding of the mandatory duty to self-report any criminal arrests or charges within 30-days; (ii) that he has read the Delaware Nurse Practice Act, including § 1930A's duty-to-report section; and, (iii) that he has read and understood the Board's Rules and Regulations and his duty to self-report. *Id.* at 76. Mr. Ripple indicated "yes" in response to all these attestations in his license renewal form. *Id.*

[24] *Id.* at 98-100.

and pending charges via automated correspondence from Delaware's Criminal Justice Information System (DELJIS).[25] When DPR receives DELJIS arrest notices for individuals maintaining active professional licenses in the State, investigators must forward the information to the State Attorney General's Office to conduct an independent investigation and notify the licensee of same.[26] Thus, upon receipt of the DELJIS notices, a cross-check of Mr. Ripple's name in the agency's licensure database system confirmed his active Registered Nurse licensure status.[27] Having received no correspondence from Mr. Ripple directly related to his arrests, a DPR investigator forwarded the matter to the Attorney General's Office, noting concern of Mr. Ripple's "lack of control" and mental fitness.[28]

(9) In November 2019, the Delaware Department of Justice filed a disciplinary complaint with the Board against Mr. Ripple.[29] Citing Mr. Ripple's two dismissed criminal charges and his successful completion of Veterans Treatment Court, the State averred disciplinary action was proper for his violations of 24 *Del. C.* §§ 1922(a)(3) ("unfit or incompetent by reason of negligence, habits, or other

---

[25]  *Id.* at 26-27.

[26]  *Id.* at 42-43; *see also* DEL. CODE ANN. tit. 29, § 8735(h) (2019).

[27]  Hr'g Tr. at 42.

[28]  *Id.* at 41, 48, 64.

[29]  Record and Transcript, Tab 6.

causes") and 1922(a)(11) ("fail[ure] to report to the Division of Professional Regulation as required by §§ 1930 and 1930A of this title").[30]

## A. THE HEARING OFFICER'S FINDINGS OF FACT & RECOMMENDATION

(10)    A Hearing Officer with the Board of Nursing conducted a hearing on November 9, 2020.[31] The Hearing Officer heard extensive testimony from a number of witnesses, including:  representatives from the Board of Nursing and the Division of Professional Regulation; Mr. Ripple himself; Mr. Ripple's treating physicians; and police officers and Mr. Ripple's colleague who were involved with, and witnesses to, his now-dismissed criminal charges.[32]

(11)    It was established at the hearing that Mr. Ripple has been a licensed registered nurse in Delaware since 2016, and has a military background—having been deployed to both Afghanistan and Iraq.[33] As a result of those deployments, he suffers from PTSD but receives regular therapy and treatment for his diagnosis.[34] The hearing testimony demonstrated that Mr. Ripple's criminal charges stemmed from an emotional, domestic-related dispute that was exacerbated by his PTSD

---

[30]    *Id.*

[31]    *See generally* Hr'g Officer Rec.

[32]    *See generally* Hr'g. Tr.

[33]    Hr'g Officer Rec. at 24-25.

[34]    *Id.* at 24-25, 28-29.

diagnosis.[35] Mr. Ripple has since been engaged in regular therapy, and his treating physicians testified that he is stable and does not pose a threat to any of his patients.[36]

(12) The Hearing Officer "concluded as a matter of law that the State has failed to prove by a preponderance of this evidence that Mr. Ripple is presently unfit or incompetent to engage in nursing practice by reason of his PTSD diagnosis in violation of 24 *Del. C.* § 1922(a)(3)."[37] Based on his review of the entire record, it was manifest that Mr. Ripple "is a good nurse who commands the respect of his peers," and his "aberrant behavior" resulting in criminal charges was solely or largely attributable to his then-unmanaged PTSD diagnosis.[38] Thus, without more evidence that Mr. Ripple's—now successfully and continually managed—PTSD diagnosis gave rise to a more permanent condition of "unfitness," a violation of § 1922(a)(3) had not occurred.[39]

(13) In a two-part analysis, the Hearing Officer determined that Mr. Ripple's failure to timely report his arrest and criminal charges violated 24 *Del. C.* §§ 1922(a)(11) and 1930A.[40] He first rejected Mr. Ripple's argument that his

---

[35] *Id.* at 24-25.

[36] *Id.* at 28.

[37] *Id.* at 32.

[38] *Id.* at 31-32.

[39] *Id.* at 32.

[40] *Id.* at 32-35.

charges weren't "substantially related to the practice of nursing" as defined by § 1930A.[41] Citing the broad introductory language of the Board's regulations requiring self-reporting for "(a)ny crime which involves the misuse or illegal possession or sale of a deadly weapon or dangerous instrument[,]"[42] the Hearing Officer concluded that Mr. Ripple's discharging of a firearm in a residential area indeed fell within that description.[43] Thus, Mr. Ripple was required to self-report his criminal charges.

(14) The Hearing Officer also concluded Mr. Ripple's reporting was untimely. Section 1930A(b) requires a licensee to notify the Board "in writing within 30 days of the arrest, bringing of the indictment or information, or of the conviction."[44] Mr. Ripple was arrested on April 24, 2019, and he notified the Board four months later in August.[45] "Though that date was within 30 days of the judicial action referring Mr. Ripple to the Veterans Treatment Court program, it was well beyond the point in time 30 days post-arrest."[46]

---

[41] DEL. CODE ANN. tit. 24, § 1930A (2019) (A licensee must report "(a)ny arrest for . . . *a crime substantially related to the practice of nursing* as defined by the Board in its rules *and regulations*.") (emphasis added).

[42] Hr'g Officer Rec. at 33-34 (quoting Bd. Reg. 15.8).

[43] *Id.*

[44] DEL. CODE ANN. tit. 24, § 1930A(b) (2019).

[45] Hr'g Officer Rec. at 34.

[46] *Id*. at 34-35.

-9-

(15) Having concluded that Mr. Ripple violated 24 *Del. C.* § 1922(a)(11) for untimely reporting his arrest under § 1930A, the Hearing Officer recommended the following disciplinary action: (i) that the Board issue a letter of reprimand; (ii) that Mr. Ripple submit quarterly status reports of his PTSD management for one year; (iii) that Mr. Ripple be ordered to pay a monetary fine; (iv) that Mr. Ripple complete three hours of continuing nursing education; and, (v) that the Board's final order constitute public action of the Board and be reportable to public practitioner databases.[47]

## B. THE BOARD OF NURSING'S FINAL ORDER

(16) On April 14, 2021, the Board issued its Final Order.[48] Under 29 *Del. C.* § 8735(v)(1)d, the Board is bound by a Hearing Officer's findings of fact but may reject or modify any conclusions of law and recommended discipline.[49] In this case, upon consideration of and deliberation on the Hearing Officer's recommendation, the developed record, and the parties' supplemental arguments, the Board affirmed

---

[47] *Id.* at 35.

[48] Final Board Order (Record and Transcript, Tab 1).

[49] DEL. CODE ANN. tit. 29, § 8735(v)(1)d (2021) ("The findings of fact made by a hearing officer on a complaint are binding upon the board or commission. The board or commission may not consider additional evidence . . . [and] shall make its final decision to affirm or modify the hearing officer's recommended conclusions of law and proposed sanctions based upon the written record.").

the recommended conclusions of law but adopted *only* the letter of reprimand into its Final Order.[50]

(17) Because Mr. Ripple wasn't found unfit or incompetent under § 1922(a)(3), the Board determined there was no basis for him to submit quarterly treatment reports. The Board did agree that Mr. Ripple violated § 1922(a)(11) for failing to timely report his arrest regardless of whether those charges were ultimately dismissed or expunged.[51] It noted that the enabling statute requires all licensees to report an arrest within thirty days—notwithstanding the final disposition—because alone such "conduct leading to an arrest can be a basis for discipline under the Board's statute and regulations."[52] Indeed, the Board observed it "has disciplined innumerable licensees for drug diversion or substance abuse" absent any criminal charges or subsequent dismissals; so, the potential dismissal or expungement of Mr. Ripple's criminal charges is immaterial to the 30-day reporting requirement, and "ignorance as to whether [ ] specific charges [are] reportable [i]s no excuse" for non-compliance.[53]

---

[50] Final Board Order at 5-6.

[51] *Id.* at 5.

[52] *Id.*

[53] *Id.* For this reason, the Board rejected Mr. Ripple's request for a continuance of his disciplinary proceedings until the completion of any expungement proceedings. *See id.*; *see also* Record and Transcript, Tab 2 (Continuance Hr'g Tr. dated Feb. 10, 2021).

(18) The Board therefore determined that some discipline was warranted but, given the circumstances, modification of the recommended disciplinary action to just a letter of reprimand was appropriate.

## C. THE INSTANT APPEAL

(19) Mr. Ripple now challenges the Board's Final Order. In his view, the Board abused its discretion: *first*, by imposing a public rather than private sanction, and *second,* by denying his request for a continuance until after the final disposition of his then-pending expungement proceedings.[54] He also argues the Board's determination that he violated § 1930A was legal error. He suggests he did timely report his arrest because he did so within thirty days of completing his long-term treatment.[55] And finally, he argues the Board's regulations enumerating the various offenses that require mandatory reporting are ambiguous and are void for vagueness.[56]

(20) In its opposition, the Board argues that its decision was free from legal error, adhered to due process principles, is supported by substantial evidence in the record, and should be affirmed.[57] Regarding Mr. Ripple's contention that the Board

---

[54] Not. of Appeal at 9-10.

[55] *Id.* at 9.

[56] *Id.*

[57] Board's Answering Br. at 13.

regulations are vague, the Board insists Mr. Ripple has failed to demonstrate how a reasonable person couldn't discern what is meant by "any crime which involves the misuse or illegal possession or sale of a deadly weapon or dangerous instrument" within the context of a nurse's self-reporting requirement.[58] The Board also asserts it did not err in interpreting the reporting requirement under 24 *Del. C.* § 1930A because the language is unambiguous and explicitly requires notification to the Board "within 30-days of the date of the arrest."[59] And finally, the Board says it did not abuse its discretion when it denied Mr. Ripple's continuance request and refused to "privately" reprimand Mr. Ripple.[60]

**STANDARD OF REVIEW**

(21) The Court's role in reviewing Mr. Ripple's challenge to the Board's decision here is limited to determining whether the Board's factual findings are supported by substantial evidence and free from legal error.[61] "The Court is not authorized to make its own factual findings, assess credibility of witnesses or weigh

---

[58] *Id.* at 14-21.

[59] *Id.* at 21-22.

[60] *Id.* at 23-28.

[61] *Michael v. Delaware Bd. of Nursing*, 2017 WL 3980540, at *3 (Del. Super. Ct. Sept. 8, 2017), *aff'd*, 181 A.3d 152 (Del. 2018) (citing *Villabona v. Bd. of Med. Practice,* 2004 WL 2827918, at *2 (Del. Super. Ct. Apr. 28, 2004)); *see also Delaware Bd. of Nursing v. Gillespie*, 41 A.3d 423, 425-26 (Del. 2012) ("We review a decision of the Board for errors of law and determine whether substantial evidence exists to support the Board's findings of fact and conclusions of law.").

the evidence."[62] The Board's decision will be affirmed if there is no mistake of law and there is substantial evidence to support the decision.[63]

## DISCUSSION

(22) The Delaware Board of Nursing's enabling statute vests it with broad educational, licensing, supervisory, and disciplinary authority over professional and practical nursing.[64] Thus, under § 1930A, when a licensee fails to report any criminal arrest within thirty days of that arrest, the Board may impose disciplinary action.[65] Mr. Ripple says the Board erred as a matter of law in interpreting this statute when it determined that he untimely reported his criminal arrest. "Nevertheless, '[s]tatutory interpretation is ultimately the responsibility of the courts.' And where a statute is clear, the plain language of the text controls."[66]

(23) The plain language of § 1930A is unambiguous. "A licensee shall self-report to the Board . . . [a]ny arrest for . . . a crime substantially related to the practice of nursing as defined by the Board in its rules *and regulations* . . . in writing within

---

[62] *Michael*, 2017 WL 3980540, at *3 (internal quotations and citations omitted).

[63] *Longobardi v. Unemployment Ins. Appeal Bd.*, 287 A.2d 690, 693 (Del. Super. Ct. 1971), *aff'd,* 293 A.2d 295 (Del. 1972); *Boughton v. Div. of Unemployment Ins. of Dep't of Labor*, 300 A.2d 25, 26-27 (Del. Super. Ct. 1972).

[64] DEL. CODE ANN. tit. 24, §§ 1901, 1922(a) (2022).

[65] *Id.* § 1930A.

[66] *Camtech Sch. of Nursing & Tech. Sci. v. Delaware Bd. of Nursing*, 2014 WL 4179199, at *3 (Del. Aug. 22, 2014) (quoting *Pub. Water Supply Co. v. DiPasquale,* 735 A.2d 378, 382 (Del. 1999)).

30 days of the date of the arrest."[67]  The failure to do so "constitutes grounds for discipline under § 1922 of [Title 24]."[68]  As an unambiguous statute precludes the need for judicial interpretation, the ordinary meaning of "30 days of the date of the arrest" controls here.[69]  The substantial evidence of record supports the Board's decision that Mr. Ripple untimely reported his arrest.  Mr. Ripple was arrested on April 24, 2019.  Only incidental to his license renewal in August of 2019 did he finally report his arrest to the Board—four months after the fact.  Because Mr. Ripple informed the Board of his arrest long after the thirty-day statutory deadline, the Board's determination that he violated the mandatory reporting requirement was not legal error.

(24)  But Mr. Ripple contends the Board's regulations are void for vagueness and challenges the Board's affirmance of its application of its own regulations.  Though the Board didn't reach the merits of this challenge in its Final Order, it did affirm the Hearing Officer's recommended conclusions of law—including the interpretation of its regulations.[70]  The Hearing Officer concluded that although the Board's regulations don't explicitly list Mr. Ripple's charges—by name and code

---

[67]  DEL. CODE ANN. tit. 24, § 1930A(a)–(b) (2019) (emphasis added).

[68]  *Id.* § 1930A(c).

[69]  *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932–33 (Del. 2007) (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)) ("An unambiguous statute precludes the need for judicial interpretation, and 'the plain meaning of the statutory language controls.'").

[70]  Final Board Order at 5.

-15-

number—as crimes triggering mandatory reporting, the broader language of the regulation's subsections describing reportable crimes sufficiently covered Mr. Ripple's offenses.[71] More specifically, "Breach of Release" fell under Board Regulation 15.6's provision requiring the reporting of "[a]ny crime which involves offenses against a public health order and decency which may tend to bring discredit upon the profession"[72]—which is a non-exclusive list but includes, among others, specific Delaware Criminal Code offenses that "evidence a lack of appropriate concern for the safety and well being of another person or persons in general."[73] And "Discharging a Firearm in the Area of an Occupied Dwelling" constituted a "reportable offense under the relatively broad language of Bd. Reg. 15.8" that includes "[a]ny crime which involves the misuse or illegal possession or sale of a deadly weapon or dangerous instrument and shall include *by way of example and not limitation*, the following [list of firearms and deadly weapon offenses]."[74]

(25) The Court engages a *de novo* review of a board or agency's statutory interpretation but "may give appropriate deference to an agency's application of its

---

[71] Hr'g Officer Rec. at 33-34.

[72] *Id.*

[73] 24 DEL. ADMIN. CODE § 1900-15.6 (2019).

[74] Hr'g Officer Rec. at 34 (emphasis in original). *See* 24 DEL. ADMIN. CODE §§ 1900-15.0, 15.8 (2019) (listing among those "Offenses substantially related to the practice of Nursing . . . [a]ny crime which involves the misuse . . . of a deadly weapon or dangerous instrument" and includes "by way of example and not of limitation" a listing of certain Delaware Criminal Code weapons offenses) (emphasis added).

own rules or regulations."[75] A statute or regulation will fail for vagueness if: (i) a person of ordinary intelligence cannot discern whether the rule forbids his contemplated behavior or may require certain acts, or (ii) it "encourages arbitrary or erratic enforcement."[76] To prevail, a claimant must show that the statute or regulation "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."[77] In context here, the use of the words "any crime" means just what it says[78] and is not at all susceptible to misunderstanding. Nothing in these challenged regulations would require men of common intelligence to necessarily guess what's required by the reporting of "any crime" resulting in an arrest or any crime involving "the misuse or illegal possession or sale of a deadly weapon or dangerous instrument." And no doubt, Board Regulation 15.8's enumeration of firearm and

---

[75] *Matter of Scottish Re (U.S.), Inc.*, 273 A.3d 277, 296 (Del. Ch. 2022) (noting further that "[w]hat a court applying Delaware law cannot do is defer to the agency's interpretation 'merely because it is rational or not clearly erroneous'") (quoting *DiPasquale,* 735 A.2d at 383). *See DiPasquale,* 735 A.2d at 383 (a court "may accord due weight, but not defer, to an agency interpretation of a statute administered by it"); *see also State Farm Auto. Ins. Co. v. Mundorf,* 659 A.2d 215, 220 (Del. 1995) ("Although the interpretation of a regulation is ultimately a question of law for a court to decide, substantial weight and deference is accorded to the construction of a regulation enacted by an agency which is also charged with its enforcement.").

[76] *Wien v. State*, 882 A.2d 183, 187 (Del. 2005)

[77] *Crissman v. Delaware Harness Racing Comm'n*, 791 A.2d 745, 747 (Del. 2002).

[78] *See, e.g.*, *B&C Holdings, Inc. v. Temperatsure Holdings, LLC*, 2020 WL 1972855, at *8 (Del. Super. Ct. Apr. 22, 2020) (quoting *Any*, Merriam-Webster, https://www.merriam-webster.com/dictionary/any and noting that "any . . . does not require that there be any elements of or an amount reflected . . . . 'Any' means 'any part, quantity, or number' and 'a or some without reference to quantity or extent.'").

deadly weapon offenses purposefully includes the broad inclusionary language "shall include *by way of example and not limitation*" to ensure that "any" arrests, crimes, charges, and/or convictions involving misuse of weapons are subject to self-reporting. Put simply, the Board's regulations challenged by Mr. Ripple here are not void for vagueness.

(26) Finally, the substantial evidence of record also supports the Board's final disciplinary order and does not evince an abuse of discretion by declining Mr. Ripple's invitation to impose some sort of "private reprimand."

(27) Section 1922 of Title 24 governs disciplinary action and gives the Board discretion to impose appropriate sanctions.[79] Thus, upon a finding that a licensee is committed a statutory or regulatory offense, the Board may impose any one, or a combination of, the following sanctions: (i) permanent license revocation; (ii) license suspension or censure; (iii) issuance of a letter of reprimand; (iv) a period of probation; (v) refusal to issue or renew a license; (vi) monetary fines; or, (vii) any other disciplinary action.[80] Here, the Court must determine whether the Board abused its discretion under this broad statutory grant.[81] And only where a Board's decision exceeds the bounds of reason under the circumstances, will it be

---

[79] *See generally* DEL. CODE ANN. tit. 24, § 1922 (2021).

[80] *Id.* § 1922(b).

[81] *See Sweeney v. Delaware Dep't of Transp.*, 55 A.3d 337, 342 (Del. 2012) ("Absent an error of law, we review an agency's decision for abuse of discretion.").

-18-

found to have abused its discretion.[82]

(28) Upon consideration of the entire record, the Board determined a letter of reprimand would be the most appropriate sanction and modified the Hearing Officer's recommendation accordingly.[83] The Board was sympathetic to Mr. Ripple's circumstances and attributed his successful PTSD management as a basis for modifying the suggested disciplinary order. In exercising its broad disciplinary discretion, the Board determined the imposition of a single sanction—a letter of reprimand—was the most appropriate punishment for the violation. It is indeed true that the Board may use its discretion to impose "any other disciplinary action" as Mr. Ripple suggests, but important here is that the Board declined to exercise that discretion and instead imposed a sanction explicitly enumerated in the statute. Nothing about that decision exceeds the bounds of reason under these circumstances. Thus, the Board did not abuse its discretion when it imposed Mr. Ripple's discipline.

(29) Neither did the Board abuse its discretion by denying Mr. Ripple's request for a continuance until after the final disposition of his then-pending criminal expungement proceedings. All licensees are statutorily bound to report *an arrest*

---

[82]   *Camtech Sch. of Nursing & Tech. Sci.*, 2014 WL 4179199, at \*3 (citing *Sweeney*, 55 A.3d at 342).

[83]   Final Board Order at 5-6.

-19-

within thirty days—the ultimate disposition of an arrest is simply of no moment.

(30) As the Board noted, an expungement is immaterial to the reporting requirement—indeed, "conduct [itself] leading to an arrest can be a basis for discipline under the Board's statute and regulations."[84] And under the plain reading of the applicable statutes and regulations it is the arrest that is the reporting trigger, regardless of what occurs thereafter—including any subsequent expungement thereof. So, Mr. Ripple, like every other licensee, had a statutory obligation to report his arrest within thirty days regardless of his subsequent treatment, court proceedings, or the ultimate disposition of his case. Thus, the Board did not abuse its discretion or legally err in denying Mr. Ripple's continuance on this immaterial basis.

(31) Under these circumstances, the Board determined Mr. Ripple had a statutory obligation to report his criminal arrest within thirty days of his arrest; his failure to do so subjected him to disciplinary action. The substantial evidence of record supports the Board's decision to issue a letter of reprimand for Mr. Ripple's violation of 24 *Del. C.* §§ 1922(a)(11) and 1930A. The Board's imposition of an explicitly enumerated sanction—a letter of reprimand—was no abuse of discretion. Accordingly, the Board's decision is free from legal error and must be affirmed.

---

[84] *Id.* at 5.

**NOW THEREFORE**, **IT IS ORDERED** that the Board of Nursing's April 14, 2021 Final Disciplinary Order is **AFFIRMED.**

**SO ORDERED this 27th day of July, 2022.**

Paul R. Wallace, Judge

cc:     John S. Malik, Esq.
Kemba Lydia-Moore, Esq., Deputy Attorney General
Jennifer L. Singh, Esq., Deputy Attorney General