**PUBLIC WATER SUPPLY COMPANY, Appellant Below, Appellant,**

v.

**Nicholas A. DiPASQUALE, Secretary of the Department of Natural Resources and Environmental Control, and Delaware Department of Natural Resources and Environmental Control and Delaware Environmental Appeals Board and Tunnell Companies, L.P., Appellees Below, Appellees.**

No. 543, 1998.

Supreme Court of Delaware.

Submitted: June 22, 1999.
Decided: Aug. 12, 1999.

F. Michael Parkowski and Jeremy W. Homer, (argued), Parkowski, Noble & Guerke, P.A., Dover, Delaware, for appellant.

David L. Ormond, Jr., Deputy Attorney General, DNREC Legal Office, Dover, Delaware, for appellees Secretary of the Delaware Department of Natural Resources and Environmental Control and Delaware Department of Natural Resources and Environmental Control.

Marc P. Niedzielski, Deputy Attorney General, State of Delaware, Department of Justice, Wilmington, Delaware, for appellee Environmental Appeals Board.

John A. Sergovic, Jr., (argued) and Julie G. Bucklin, Sergovic, Ellis & Shirey, P.A., Georgetown, Delaware, for appellee Tunnell Companies, L.P.

Before VEASEY, Chief Justice, WALSH, HOLLAND, and BERGER, Justices, and LAMB, Vice Chancellor,[*] constituting the Court En Banc.

WALSH, Justice.

In this appeal from the Superior Court, we examine the authority of the Secretary of the Delaware Department of Natural Resources and Environmental Control to issue potable water permits to a mobile home park developer over the protest of a public water utility claiming authority to serve the disputed territory. The Superior Court rejected the utility's claim that the trailer park's proposed water distribution scheme infringed upon the utility's certificate of public convenience and necessity and upheld granting of the well permits. The Superior Court further ruled, applying a deferential standard of review, that the Secretary's decision to grant the well permits was sustainable as a matter of law.

Without reaching the underlying merits of the dispute, we conclude that the standard of review applied by the Superior Court was unduly deferential to the extent it applied a clearly erroneous test to an administrative agency's interpretation of statutory law. Accordingly, we reverse

and remand for further proceedings under a *de novo* standard.

I

The dispute underlying this appeal began with an application to the Secretary of the Department of Natural Resources and Environmental Control ("DNREC") by the appellee, Tunnell Companies, L.P. ("Tunnell") for two potable well permits.[1] The purpose of the application was to allow Tunnell to supply water to tenants of a mobile home project, and an adjacent 18–hole golf course, known as Baywood Greens in the Long Neck area of Sussex County.[2] The application was opposed by the appellant, Public Water Supply Company, Inc. ("PWSC"), a public water utility certificated by the Delaware Public Service Commission ("PSC") and DNREC to supply water to the public generally. PWSC's distribution mains adjoin Baywood Greens and it views that area as geographically within its service territory.

The contested application was referred to a Hearing Officer who, after receiving testimony and documentary evidence, ruled that the Baywood Greens water system, as envisioned, did not constitute a water utility and thus did not infringe upon PWSC's certificated area. The Hearing Officer then determined that Tunnell was not precluded from distributing water to its tenants at Baywood Greens under the restrictions set forth in 7 *Del.C.* § 6077(b).[3] Based on his findings, the

***

(b) Following issuance of a certificate of public convenience and necessity to a water utility, the department shall not withhold a potable water well permit or require an applicant for a potable water well in an area served by a water utility to utilize the services of the utility, unless:

(1) The Delaware Geological Survey or the Division of Public Health certifies that the groundwater supply is inadequate or unsuitable for the intended use for which the permit is being sought; or

(2) The utility demonstrates to the satisfaction of the Department that it can provide service of equal or better quality at lower cost; or

---

[*] Appointed pursuant to Art. IV, § 12 of the Delaware Constitution and Supreme Court Rule 2(a).

1. Although not at issue in this appeal, Tunnell also was granted three irrigation well permits and two water allocation permits.

2. Tunnell proposes to supply water to its tenants, through individual meters, with the cost to be included as a component of "rent" as is sewer and road maintenance. The only public consumption of water would occur in the drinking fountain and rest rooms of the golf course.

3. Section 6077 is entitled "Issuance of certificate; limitations" and provides:

Hearing Officer recommended the issuance of the potable well permits to the Secretary who, in turn, approved the Hearing Officer's report and issued the permits.

PWSC then appealed to the Environmental Appeals Board (the "EAB") which, in effect, adopted the Secretary's affirmation of the Hearing Officer's report and upheld the Secretary's action. PWSC then appealed to the Superior Court alleging that the administrative entities who authorized the issuance of the permits to Tunnell had misconstrued the pertinent provisions of Title 7, Chapter 60 in failing to recognize PWSC's certificated rights to serve water in its service territory.

The Superior Court commenced its review of the EAB ruling by applying the deferential standard of review announced by this Court in *Eastern Shore Natural Gas Co. v. Delaware Public Service Comm.*, Del.Supr., 637 A.2d 10, 15 (1994). The court then determined that the phrase "for public use" contained in 7 *Del.C* . § 6002(27)[4] was ambiguous and required interpretation. The court further concluded that, conceptually, the question of whether a water distributing entity may be viewed as a water utility under 7 *Del.C.* § 6002(27) is not controlled by whether it enjoys that status as a public utility under 26 *Del.C.* § 102(2), the statute providing for regulation by the PSC. In approving the EAB's interpretation of "water utility" in the differing statutory contexts, the Superior Court ultimately determined that "[h]ow the EAB reached its decision here is entirely reasonable and not clearly erroneous." *Public Water Supply Co., Inc. v. Tulou*, Del.Super., C.A. No. 98A–02–005, mem. op. at 14 (Nov. 23, 1998).

The Superior Court also considered PWSC's claim that Tunnell was not entitled to potable water permits because it was required to utilize the services of a water utility serving a franchised territory. PWSC premised its claim on what it views as the statutory restriction imposed on DNREC permitting authority under 7 *Del.C.* § 6077(b)(3). The Superior Court, however, viewed this statutory restriction as unambiguous and inapplicable to Tunnell's application. Although the court did not appear to apply a clearly erroneous standard to this issue, it reached the same interpretative result as did the EAB. In short, the Superior Court affirmed the EAB in all respects.

## II

■ Our standard of review of a Superior Court ruling that, in turn, has reviewed a ruling of an administrative agency is set forth at length in *Stoltz Management Co., Inc. v. Consumer Affairs Bd.*, Del.Supr., 616 A.2d 1205, 1208 (1992):

Our standard of review mirrors that of the Superior Court. Where there is a review of an administrative decision by both an intermediate and a higher appellate court and the intermediate court received no evidence other than that presented to the administrative agency, the higher court does not review the decision of the intermediate court but, instead, directly examines the decision of the agency. *Baker v. Connell*, Del. Supr., 488 A.2d 1303, 1309 (1985).

The question then posed, and critical to this appeal, is whether, on appeal from a decision of an administrative agency, this Court, the Superior Court, and, to a more limited extent, the Court of Chancery[5] should review statutory interpretations of

(3) The applicant is a resident of a municipality, county water district or recorded development where public water is available.

4. 7 *Del.C.* § 6002(27) provides:
"Water utility" shall mean any person or entity operating within this State any water

service, system, plant or equipment for public use.

5. By statute, the Court of Chancery enjoys limited appellate jurisdiction over administrative or regulatory agencies. *See, e.g.,* 14 *Del.C.* § 4009.

administrative bodies on a *de novo* basis, or, instead, should defer to such interpretations unless shown to be clearly erroneous? This issue was addressed in *Stoltz*, in which we stated, as follows:

On appeal from a decision of an administrative agency the reviewing court must determine whether the agency ruling is supported by substantial evidence and free from legal error. *State, Dept. of Labor v. Medical Placement Services, Inc.*, Del.Super., 457 A.2d 382, 383 (1982), *aff'd*, Del.Supr., 467 A.2d 454 (1983). Absent an abuse of discretion, the decision of the agency must be affirmed. *Id.* However, where, as here, the issue is one of construction of statutory law and the application of the law to undisputed facts, the court's review is plenary. *E.I. du Pont de Nemours Co., Inc. v. Shell Oil Co.*, Del.Supr., 498 A.2d 1108, 1113 (1985).

616 A.2d at 1208.

In this case, the Superior Court did not apply the plenary standard of review for issues of statutory construction suggested by the language in *Stoltz*. Rather, it relied on this Court's later opinion in *Eastern Shore* as stating the appropriate standard for review of the EAB decision. The *Stoltz* affirmation of a plenary standard of review for agency interpretation of statutory law is consistent with this Court's standard of *de novo* review of legal rulings by trial courts. *Arnold v. Society for Savings Bancorp, Inc.*, Del.Supr., 650 A.2d 1270, 1287 n. 30 (1994); *Merrill v. Crothall–American, Inc.*, Del.Supr., 606 A.2d 96, 100 (1992). Indeed, it would be anomalous for this Court to accord a higher level of deference to the legal rulings of an administrative agency than that applied to trial courts subject to our appellate jurisdiction.

The language relied upon by the Superior Court, which lies at the root of the issue addressed today, is as follows:

This Court's standard of review 'mirrors that of the Superior Court.' *Stoltz Management Co., Inc. v. Consumers Af-

*fairs Bd.*, Del.Supr., 616 A.2d 1205, 1208 (1992). When the issue is one of agency interpretation of statutory law, and application of that law to undisputed facts, this Court's review of the agency's decision is plenary, and it is not bound by the agency's conclusion. *Id.* This Court will give substantial weight to the [agency's] interpretation of a statute it is empowered to enforce, provided that construction is not clearly erroneous. *Nationwide Mutual Insurance Co. v. Krongold*, Del.Supr., 318 A.2d 606, 609 (1974); *Vassallo v. Haber Electric Co.*, Del.Super., 435 A.2d 1046, 1050 (1981). Thus, this Court will not reverse the [agency's] decision unless we find that [its] interpretation of 26 *Del.C.* § 102(2) is clearly erroneous.

637 A.2d at 15. After quoting from *Eastern Shore*, the Superior Court in this case stated that "[i]f I find that the EAB has not clearly erred in interpreting its statutes, then I will affirm its decision." *Public Water Supply Co., Inc.*, mem. op. at 11.

■ PWSC argues that the standard of review described in *Eastern Shore* and applied by the Superior Court in this case is inconsistent with *Stoltz* and unduly deferential to the statutory interpretations of administrative agencies. We agree.

Tracing the cases cited in *Eastern Shore* reveals that the language used was derived from a 1947 Delaware Superior Court case *Connell v. Delaware Aircraft Ind., Inc.*, Del.Super., 55 A.2d 637 (1947). In *Connell*, the court was faced with issues involving the Fair Labor Standards Act. *Id.* at 639. In computing the amount of recovery the court held that the plaintiff was not entitled to be compensated for time spent eating meals and that "[t]his conclusion is in accordance with a ruling of the Administrator, which, while not controlling upon us, is nevertheless entitled to some weight unless clearly wrong. Interpretative Bulletin No. 13 Wage and Hour Divi-

sion. See *Fox v. Summit King Mines*,[6] 9 Cir., 143 F.2d 926." *Id.* at 645. It would thus appear that *Eastern Shore*'s standard evolved from a case dealing with application of a federal statute and which preceded Delaware's adoption of the Administrative Procedures Act in 1976. *See* 60 *Del.Laws*, c. 585, § 4 (1976).

In *Nationwide Mutual Ins. Co. v. Krongold*, Del.Supr., 318 A.2d 606 (1974), however, this Court in answering certified questions of law presented by the Superior Court regarding interpretation of the Delaware Motorist Protection Act, cited *Connell* and stated "[w]hile the ruling of an administrative agency is not necessarily controlling on a court, it is entitled to some weight unless clearly wrong." *Id.* at 609.

In the third case cited in *Eastern Shore*, *Vassallo v. Haber Electric Co.*, Del.Super., 435 A.2d 1046 (1981), the Superior Court stated "[a]n administrative agency's construction of regulations enacted by it and statutes it administers are given great weight by the courts, provided said construction is not clearly erroneous. The courts, however, ultimately determine the true interpretation or construction of a particular statute or regulation." *Id.* at 1050. The *Vassallo* court only cited to two sections of 2 AMERICAN JURISPRUDENCE 2D ADMINISTRATIVE LAW §§ 306, 307. These sections do not involve the issue of standard of review or judicial deference to an administrative construction.[7]

In addition to its questionable case support, the standard of review ruling in *Eastern Shore* appears internally inconsistent. After reciting a plenary review requirement for "agency interpretation of statutory law" this Court created a substantial weight/clearly erroneous level of deference for "interpretation of a statute [the administrative agency] is empowered to enforce." 637 A.2d at 15. The two standards cannot co-exist in the same process of statutory review. If there is a distinction to be made in the standard of review of agency decisions it lies in the deference due an agency's interpretation of its own rules or regulations. This may partially explain the holdings in *Krongold* (implementing regulations of Insurance Commission, if not clearly wrong, viewed as element supporting statutory interpretation) and *Vassallo* (regulations of Department of Labor implementing statute given great weight if not clearly erroneous but "[t]he courts . . . ultimately determine the true interpretation or construction of a particular statute or regulation").

We view the standard of judicial review of agency determinations of issues of statutory construction articulated in *Eastern Shore* as overly deferential and confusing. Accordingly, it is overruled. Statutory interpretation is ultimately the responsibility of the courts. A reviewing court may accord due weight,[8] but not defer, to an agency interpretation of a statute administered by it. A reviewing court will not

---

**6.** The relevant portion of the *Fox* opinion relates to a District Court's conclusions of fact after a bench trial and not the deference due to an agency's interpretation of the Fair Labor Standards Act. *Fox v. Summit King Mines, Ltd.*, 9th Cir., 143 F.2d 926, 932–33 (1944).

**7.** Section 240 deals with this issue in general terms, noting the general rules and exceptions. 2 AM.JUR.2D ADMINISTRATIVE LAW, § 240 (1994).

**8.** For example, a statute may broadly define a term, such as "hazardous materials" which term, to be used in actual application of the statute by the relevant enforcing agency, re-

quires a specific and technical definition. If that agency defines such a term (*e.g.*, by listing actual substances covered by the statute's broad definition) by bringing its technical expertise to bear thoughtfully on the question through a rulemaking process in compliance with the Administrative Procedures Act, it is to be expected that a reviewing court would accord substantial weight to the agency's interpretation of the statute. Similarly, where an agency interpretation is longstanding and widely enforced, a reviewing court would ordinarily accord greater weight to the underlying agency interpretation of the statute in determining, for itself, the optimal interpretation.

defer to such an interpretation as correct merely because it is rational or not clearly erroneous.[9]

DNREC argues that in the event this Court should disavow *Eastern Shore's* standard of review, we should adopt the standard approved by the United States Supreme Court for federal agencies under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron,* the Court held that where Congress has failed to unambiguously express its intent, "the court does not simply impose its own construction on the statute as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 842–43, 104 S.Ct. 2778 (footnotes omitted). The Court noted that Congress may implicitly delegate authority to the agency to "elucidate a specific provision" of a statute by regulation, and in that situation the court may not "substitute its own construction of [the provision] for a reasonable interpretation made by the administrator of the agency." *Id.* at 843–44, 104 S.Ct. 2778. In so holding, the Court relied on its own unique history of deference to federal administrative agencies' construction of statutes they are empowered to administer. *Id.* at 844–45, 104 S.Ct. 2778.

We expressly decline to adopt such a standard with respect to review of an agency's interpretation of statutory law and reaffirm our plenary standard of review. While an agency's construction of a regulation promulgated by it may be entitled to some deference, it is unnecessary for this Court to reach the applicability of *Chevron* under the circumstances of this case.

At each level of the administrative process to which Tunnell's application was subjected, from the Hearing Officer through the EAB, the focus was on the interpretation of statutory law, not administrative regulations. Moreover, DNREC has not been charged by the General Assembly with elucidating statutory meaning through implementing regulations. Even if we were invited to consider the merit of *Chevron's* teaching, this case does not provide an appropriate setting to do so.

### III

■ While we overrule *Eastern Shore's* pronouncement of the standard of review of statutory interpretation by administrative agencies, we endorse its substantive holdings as they may apply to the question of what constitutes the operation of a public utility under Delaware law. In particular, we note this Court's application of a "public interest" test, *i.e.,* "regardless of

---

9. Deference to administrative agency determinations of fact based on expertise, however, is specifically contemplated by the Administrative Procedures Act which provides in pertinent part:

\*\*\*

(d) The Court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted. The Court's review, in the absence of factual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency.

29 *Del.C.* § 10142. Similarly, a reviewing court may be expected to defer to the construction placed by an administrative agency on regulations promulgated or enforced by it, unless shown to be clearly erroneous. *Cf. Krongold,* 318 A.2d at 609.

The statement in *Stoltz* that a "reviewing court must determine whether the agency ruling is supported by substantial evidence," 616 A.2d at 1208, reflects the requirements of this statute. So, too, does *Stoltz's* pronouncement that "[a]bsent an abuse of discretion, the decision of the agency must be affirmed," *id.,* which we read as referring only to agency findings of fact that are supported by substantial evidence in the record before the agency and the application of those facts to settled principles of law.

whether a company sells to less than the general public, when a company engages in the sale of a regulated commodity to independent third parties" the selling entity may be subject to the jurisdiction of the PSC. 637 A.2d at 18. Although we do not address the merits of the underlying dispute, for the guidance of the Superior Court we view the substantive rulings of this Court in *Eastern Shore* as viable notwithstanding a division of regulatory authority between DNREC and the PSC.

At issue in *Eastern Shore* was the definition of "public utility" as found in 26 *Del.C.* § 102(2). *Id.* at 15. That section provides:

> "Public utility" includes every individual, partnership, association, corporation, joint stock company, agency or department of the State or any association of individuals engaged in the prosecution in common of a productive enterprise (commonly called a "cooperative"), ..., that now operates or hereafter·may operate within this State any ... natural gas, ... water, ... service, system, plant or equipment, *for public use.*

26 *Del.C.* § 102(2) (emphasis supplied). The focus in *Eastern Shore* was upon the phrase *for public ·use,* and we noted that the "pivotal" issue revolved around determining whether the potentially regulated company's activities had a significant impact on the public interest that the Commission was designed to protect, preserving and promoting indispensable services while preventing inferior service with excessive and discriminatory rates. *Id.* at 15–17.

The Superior Court, after recognizing that it must make the same determination made in *Eastern Shore,* held that such determination must be made within the context of Title 7, pertaining to DNREC, not Title 26, pertaining to the PSC. The court held that it must determine whether Tunnell's activities would have a significant

impact on the public interest DNREC was designed to protect, ensuring that Delaware residents obtain safe drinking water. The court also considered that the General Assembly instructed DNREC to preserve "the traditional patterns of water utilization for agriculture, for rural, single-family residential units not part of a development or unincorporated community, for industry and for other traditional users of groundwater in unincorporated areas." *Public Water Supply Co., Inc.,* mem. op. at 13, quoting 7 *Del.C* . § 6075.

The court found that where the company was not in the business of supplying water, the intent of the statute was met. The Superior Court concluded that the EAB was not "compelled" to reach the same conclusion as was reached in *Eastern Shore* after finding that there was a difference in the "regulation of gas versus water."

We disagree that there is a distinguishable difference in the ·regulation of natural gas versus water that renders our substantive decision in *Eastern Shore* irrelevant. As stated above, both natural gas and water, among others, continue to be regulated commodities under Title 26. 26 *Del.C.* § 102(2). Further, even though the General Assembly split the regulatory authority with respect to water between the PSC and DNREC, a review of the legislative history instructs that such authority should not be viewed as mutually exclusive.

In 1976, Senate Bill No. 730 as amended by Senate Amendment No. 2 was passed by the Senate and the House. That legislation effected a transfer of the authority to issue certificates of public convenience and necessity ("CPCN's") to the Secretary of DNREC. That bill provided that "[n]othing contained in this section shall be construed to conflict with the power of the Public Service Commission ... to consider the efficiency, sufficiency, consistency, and

adequacy of the facilities provided and the services rendered by any water utility as a factor in rate determination." S.B. 730, § 6(c) (1976). That legislation further stated that the Secretary, if requiring a water utility to extend its business or operations, "shall send a report to the Public Service Commission, if a water utility under the jurisdiction of the Public Service Commission is involved. . . ." *Id.* at § 6(b). That legislation also provided an identical definition for water utility that was to be inserted into both Titles 7 and 26. *Id.* at §§ 1, 4. That definition was " '[w]ater utility' shall mean any person or entity operating within this state any water service, system, plant or equipment for public use." [10] *Id.*

Although Senate Bill No. 730 was passed, it was never codified due to confusion created by Governor Tribbitt's pocket veto of four acts, one of which included Senate Bill No. 730.[11] Subsequently in 1991, the General Assembly sought to "properly" codify the authority of DNREC to issue CPCN's and to limit the scope of the powers that "issuance of such certificates conveys to water utilities." 68 *Del. Laws,* c. 124 (1991).

In 1991, the General Assembly formally transferred the authority to grant CPCN's or extensions of existing CPCN's to the Secretary. 68 *Del.Laws,* c. 124, § 6 (1991). In doing so, the General Assembly reiterated the statements contained in Senate Bill No. 730 regarding conflict with the power of the PSC and retained the definition of water utility from Senate Bill No. 730, again inserting identical definitions

into both Title 7 and Title 26. 68 *Del. Laws,* c. 124, §§ 1, 3, 6 (1991).

The synopsis for the 1991 legislation referred to three basic purposes: i) codifying the statutory authority of DNREC to issue CPCN's to water utilities to begin operations or extend their service territory; ii) setting forth the manner in which such a certificate was to be considered; and iii) setting forth certain conditions which must be met before a certificate may be issued and certain "protections of the public use of groundwater supplies." The synopsis further stated that the "legislation reaffirms the powers of the Public Service Commission to regulate the *operations and rates* of a water utility to determine that the customers are being properly served." *Id.* (Emphasis supplied).

We find it inconceivable that the General Assembly would define "water utility" with identical language in Titles 7 and 26, yet contemplate that the meaning would change dependent upon whether DNREC or the PSC was regulating the water use. It is clear that the General Assembly granted regulatory authority of water utilities to both the PSC and DNREC, not one to the exclusion of the other. Like the definition of "public utility" examined in *Eastern Shore,* the definition of water utility reflected in 7 *Del.C.* § 6002(27) and 26 *Del.C.* § 102(8) turns upon the phrase "for public use." On remand the Superior Court should be mindful of the General Assembly's intent that a "water utility" be regulated potentially by both agencies.

The decision of the Superior Court is REVERSED and REMANDED to the Su-

---

10. We note that the substance of the definition for water utility contained in 7 *Del.C.* § 6002(27) and 26 *Del.C.* § 102(8) is essentially the same as that of public utility defined in 26 *Del.C* . § 102(2) and construed in *Eastern Shore.*

11. The Justices of the Supreme Court rendered an advisory opinion to Governor du Pont in 1979 relating to the purported vetoes of Governor Tribbitt. *Opinion of the Justices,*

Del.Supr., 405 A.2d 694 (1979). It was the opinion of the Justices that a 1969 amendment to Article II, § 4 of the Delaware Constitution did not require a final adjournment on June 30th. *Id.* at 699. As a result of this opinion the bills which were the subject of the purported pocket vetoes were considered valid by "most legal authorities." 68 *Del.Laws,* c. 124 (1991).

perior Court for further proceedings consistent with this opinion.