CHRISTIANA TOWN CENTER, LLC., CTC PHASE II, LLC, and CTC EAST, LLC, Appellants,
v.
NEW CASTLE COUNTY, SEARS, ROEBUCK AND CO., and KRC ACQUISITIONS, INC., Appellees.
No. 189, 2009.
Supreme Court of Delaware.
Submitted: October 21, 2009.
Decided: December 1, 2009.
Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the court en banc.

ORDER
MYRON T. STEELE, Chief Justice
This 1st day of December, it appears to the Court that:
(1) Christiana Town Center, LLC; CTC Phase II, LLC; and CTC East, LLC appeal the Vice Chancellor's decision upholding the New Castle County Council's approval of KRC Acquisitions, Inc. and Sears, Roebuck and Co., Inc.'s rezoning and development project. CTC argues the Vice Chancellor erroneously decided that (1) the Unified Development Code ambiguously defines major plans, (2) the County Council's interpretation of the UDC deserves deference, and (3) Sears' rezoning does not constitute a major plan. We find no merit to CTC's argument and AFFIRM.
(2) Sears submitted an exploratory sketch to the New Castle County Department of Land Use that set out Sears' plan for a 447,000 square-foot shopping center on 45 acres of land. Sears also requested rezoning to Commercial, Retail to make the property appropriate for community and regional commercial services.
(3) Sears offered to build a stormwater management system to alleviate drainage problems on the adjoining land. Additionally, Sears proposed expanding Eagle Run Road across the property to connect Routes 273 and 7 and to decrease traffic congestion in the area.
(4) The New Castle County Planning Board and the Department of Land Use approved Sears' preliminary plan and recommended that the County Council approve the rezoning. DelDOT expected Sears' plan and other developments to increase traffic surrounding the property. Accordingly, DelDOT recommended conditioning the issuance of any building permits on Sears' reaching an agreement with DelDOT to fund part of the road-improvement costs.
(5) CTC sent a letter to the County Council urging it to deny the rezoning. It alleged that the Eagle Run-Route 273 intersection already suffered from dangerous congestion, and that constructing a new shopping center on Eagle Run Road would only make the problem worse. Second, CTC asserted that the UDC required Sears to submit a traffic impact study for this rezoning. CTC presented its argument in person, when the County Council met to consider the rezoning.
(6) The County Council unanimously approved the rezoning to Commercial, Regional. CTC then sued Sears, KRC, and New Castle County in the Court of Chancery. The Vice Chancellor dismissed the suit, holding that the plan complied with the requirements of the UDC. CTC appeals from that judgment.
(7) Generally, a developer must obtain a TIS of the proposed development's capacity to support traffic the new project will generate.[1] In the TIS, an engineer estimates how much additional traffic the new site will generate and determines the surrounding intersections' ability to handle that additional volume.[2] Article 8 of the UDC exempts a property owner seeking to redevelop an existing property from the TIS requirement, when the owner promises to bring the property into greater harmony with the overall objectives of the UDC.[3] The parties dispute whether Sears' plan meets this exemption.
(8) Traffic and other adverse effects of development in New Castle County inspired the UDC's adoption in 1997.[4] The UDC, therefore, encourages developers to revitalize existing properties, reduce sprawl, and bring older properties up to code. Sears asserts that its proposal meets these objectives by bringing the property into conformity with land use requirements that did not exist during its initial development over forty years ago. Sears' plan also addresses stormwater management and traffic decongestion issues.
(9) The parties agree that § 40.08.130(b)(6)(e)(7) exempts major plans from the TIS requirement,[5] but disagree whether a plan that requires rezoning can benefit from this provision. CTC contends that Sears requires rezoning separately from approval of the general plan, and that this separate request triggers a TIS requirement. The County Council decided, to the contrary, that § 40.08.130(b)(6)(e)(7) only requires a TIS if DelDOT requests one. CTC contends that the County Council misinterpreted this provision of its own code.
(10) CTC asserts that § 40.31.113, which governs the preliminary planning process, recognizes different procedures for rezonings and "Preliminary Plans Without Rezoning." CTC contends that §§ 40.11.150 and 40.11.155 prove a distinction between rezoning and a major plan, under the UDC, because a major plan without a rezoning or a rezoning without a major plan may require a TIS.
(11) Sears counters that § 40.08.130(B)(6)(c)(2) defines major plan irrespective of rezonings, because major plans without a rezoning may skip the preliminary review phase and move directly from exploratory sketch to final record plan.[6] Sears contends that this section establishes that, without qualification, the mere reference to major plans includes plans with and without rezonings.
(12) As the UDC does not resolve the ambiguity in the definition of major plan, we turn to Webster's Unabridged Dictionary. Webster's defines major as "greater in number, quantity, or extent: larger,"[7] and plan as "a drawing or diagram drawn on a plane."[8] CTC asserts that, under these definitions, a major plan does not include a rezoning because a rezoning changes the zoning of land, not a diagram or drawing. Sears contends that a rezoning is a major plan, because the County Council passed a rezoning ordinance for a drawing or diagram of the plan. The dictionary does not assist our understanding of major plans in the UDC.
(13) On appeal, CTC asserts that the Vice Chancellor erroneously deferred to the County Council's decision. The County Council acts as an administrative agency when considering zoning ordinances, and receives deference when interpreting its own rules. CTC cites an inapposite decision,[9] in which we rejected this deferential standard of review when an administrative agency interpreted a statute. We did not defer to the agency's decision in DiPasquale because, unlike this County Council decision, it did not interpret its own rules.
(14) The UDC ambiguously defines major plans and CTC has failed to persuade us otherwise. Because the County Council's interpretation of its UDC does not clearly err, in order to reverse the County Council and the Vice Chancellor, we would be forced to substitute our judgment for theirs, respectively, on how to define "major plan." We will not do so.
NOW THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is AFFIRMED.
NOTES
[1] UDC § 40.11.130.
[2] Id. DelDOT must also review the report. UDC § 40.11.140.
[3] UDC § 40.08.
[4] UDC § 30.01.015(D)(1) (stating that the UDC should promote an adequate transportation system).
[5] "An operational analysis may be required for major plans. A traffic impact study shall only be required if requested by DelDOT."
[6] UDC § 40.08.130(B)(6)(c)(2).
[7] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 1363.
[8] Id. at 1729.
[9] Public Water Supply Co. v. DiPasquale, 735 A.2d 378 (Del. 1999).