# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TOM L. KIRK                          )
                                     )
                Appellant,           )
                                     )   C.A. No. N19A-04-005 CEB
        v.                           )
                                     )
DELAWARE BOARD OF                    )
ELECTRICAL EXAMINERS,                )
                                     )
                Appellees.           )


Submitted:  December 31, 2019
Decided:  July 9, 2020

*Appeal from a Decision of the*
*Delaware Board of Electrical Examiners.*
**AFFIRMED**

## ORDER

1.      The Court has under consideration an appeal of Tom L. Kirk ("Kirk") from a decision of the Delaware Board of Electrical Examiners ("Board").  The Board agreed with the recommendations of the Hearing Officer and found that Mr. Kirk violated Delaware law by permitting an unlicensed employee to perform electrical work.  The Board's decision is affirmed for the reasons stated below.

2.      Kirk is a licensed electrician whose company won a bid to complete a majority of the electrical work for a Planet Fitness project in 2018.  A complaint was

1

filed against Kirk's company.[1]    The complaint alleged that Kirk's company employed a worker, Mr. Aldaz, who performed electrical work without an electrical license.[2]

3.    There is no dispute that at the time of the incident and the hearing, Mr. Aldaz was not a licensed electrician.    There is no dispute that Mr. Aldaz was employed at the time by respondent Mr. Kirk and Mr. Kirk was, therefore, subject to the sanctions of 24 *Del. C.* §1423 (duty to report) and §1412 (grounds for discipline) to the extent that one of his employees engaged in electrical work.

4.    The only real dispute before the Board was whether Mr. Aldaz was performing "electrical work," with Respondent taking the position that he was working on low voltage data or telephone wiring, which concededly does not require an electrician's license and the Board's inspector and witnesses taking the position that he was working on 120 volt electrical wiring.    Whatever it was, the inspector observed him, 20 feet up on a scissor jack platform, labeling (or relabeling) wires. The Hearing Examiner found that the evidence preponderated that Aldaz was working on electrical wiring and not telephone or data wires. That finding, being subject to the credibility of the witnesses, is supported by some of the conflicting evidence and must be credited on this appeal.

---

[1] Board of Electrical Examiners' Record. D.I. 15 at Tab E.
[2] *Id.*

2

5.      The primary objective of the Board of Electrical Examiners "to which all other objectives and purposes are secondary, is to protect the general public."[3] The Boards secondary objective is to maintain professional competency in the electrical field and to adjudicate violations of non-compliance.[4] One cannot "engage in the practice of providing electrical services" without a license issued by the Board.[5]

6.      As to what constitutes, "providing electrical services," the term is not defined by the Code precisely.  A regulation issued by the Board states that

> "To perform 'electrical services' or 'electrical work' means to perform, maintain, troubleshoot or supervise any electrical work covered by the National Electrical Code (NEC) as adopted by the Delaware State Fire Prevention Commission which may include but is not limited to the installation, erection, or repair of any electrical conductor, molding, duct, raceway, conduit, machinery, apparatus, device, or fixture for the purpose of lighting, heating, or power in or on any structure."[6]

7.      Throughout the proceedings, Respondent has made much of the fact that the NEC was not introduced as an exhibit nor was a specific definition culled from the NEC that defined "electrical service" or "electrical work."  Three explanations are possible: 1) the Board did not have a copy, 2) electrical work is a defined term and connecting or labeling 120 volt wires on a scaffold is not

---

[3] 24 *Del. C.* § 1401.
[4] *Id.*; 24 *Del. C.* § 1412(a)(2).
[5] 24 *Del. C.* § 1407.
[6] 24 DE ADC 1400-1.0.

3

considered electrical work (in which case the Respondent would surely have raised it), or 3) these terms are simply not defined by the NEC at all.

8. Further complicating matters is the fact that the Board's definition of "electrical work" is that it is "electrical work" covered by the NEC. We might avoid the linguistic tautology presented by this unfortunate phrase if we consider that the goal was to include everything "covered" by the NEC, which we can presume is an exhaustive catalogue of all things involving electrical connections, loads, overloads, etc. Support for this proposition is found in the fact that the regulation goes on to state that it "includes, *but is not limited to* the installation, erection, or repair of any electrical conductor, molding, duct, raceway, conduit, machinery, apparatus, device, or fixture…"[7]

9. The Court notes how much easier this review would have been if a copy of the NEC were in the record and the Hearing Examiner had referred to it in her ruling. But it is not for the Hearing Examiner to propound the evidence; that is a function left to the parties. Here, neither did. Because neither did, the Court must conclude that the NEC is not helpful in resolving the question whether working on a raised platform with 120 volt wiring either labeling or relabeling wires is "electrical work."

---

[7] 24 DE ADC 1400-1.0.

10.    One can imagine a dispute where the term "electrical work" is more closely questioned. For example, had the Hearing Examiner concluded that Mr. Aldaz was indeed labeling low voltage telephone wires as Respondent maintained, the question whether this constituted electrical work would be more eventful. The fact findings made by the Hearing Examiner in this case, however, make the decision relatively easy. Because the regulation explains that the NEC is inclusive, and not a limitation on the definition of electrical work, the conclusion that Respondent does not have a winning argument is clear. Mr. Aldaz was installing, erecting or repairing an electrical conductor (wires are generally known to conduct electricity), as found as a fact by the Hearing Examiner and the Court finds that Respondents argument that his specific conduct must be defined in the NEC is unavailing.

11.    The Court will note further that it was the Respondent's license that was placed on probation; the Board's ruling had no direct effect on Mr. Aldaz. Respondent is a licensed electrician. If Mr. Aldaz did not know what "electrical work" is, the Court may fairly presume that the Respondent did. The Respondent's liability stems from the fact that he permitted his employee Mr. Aldaz to work on what we may fairly presume Respondent knew was electrical work.

12.    This was not Kirk's first time before the Board. In 2015 Mr. Aldaz was found at another one of Kirk's building sites "working with electrical conduits"

5

without a valid license.[8] Kirk as the supervisor of the project was found in violation of 24 *Del. C.* § 1423(a)(c) and § 1412(a)(2).[9] Kirk, during the hearing in 2015, claimed that he did not know Mr. Aldaz was required to have a license to perform that work. The Board disagreed and found Kirk noncompliant with the statute. The Board also noted that a laborer is permitted to work on the site without a valid license provided the individual only performs task such as hauling materials, loading trucks, and cleaning the site.[10]

13. Here again, Kirk was found to be in violation of the same statutes involving the same employee from 2015. The investigators who arrived on the Planet Fitness site witnessed Mr. Aldaz working on a scissor lift "working on wire which was coming out of the conduit at the back of the business," which housed 120 volt electrical wire.[11]

14. This Court reviews *de novo* an agency's interpretation and application of the relevant statutes.[12] The ruling of an administrative agency is not necessarily controlling on a reviewing court, but the court is entitled to assign weight to the agency's interpretation unless the interpretation is clearly erroneous.[13] In instances

---

[8] Board of Electrical Examiners' Record. D.I. 15, Tab D at 3.
[9] *Id.* at 6.
[10] *Id.* at 9.
[11] Board of Electrical Examiners' Record. D.I. 15, Tab A.
[12] *Public Water Supply Co. v. DiPasquale,* 735 A.2d 378, 382 (Del.1999).
[13] *Nationwide Mut. Ins. Co. v. Krongold,* 318 A.2d 606, 609 (Del. Supr. 1974).

6

where there is a dispute over the meaning of a statute, the court seeks to ascertain the legislative intent while recognizing that Delaware courts emphasize the "plain meaning" standard when interpreting statutes.[14]

15.    In addition to the "electrical work" argument raised by Kirk, he also claims that he was denied due process because the charge did not fairly put him on notice of what he needed to defend against. Due process requires that the parties be informed of the time, place, date and subject matter of the administrative proceeding.[15]   Kirk argues that he did not receive notice of the subject matter of the charges against him. But the complaint specifically indicates that the State alleges that Kirk violated 24 *Del. C.* § 1412(a)(7), 24 *Del. C.* § 1423(c) and 24 *Del. C.* § 1423(a)(2).[16]   The Complaint also alleges that Mr. Kirk violated the law by permitting Mr. Aldaz to perform "electrical work that included re-labeling electrical wires."[17]   The complaint also states that Kirk violated the above statutes by not ensuring that Mr. Aldaz was licensed while performing electrical work and Kirk failed to report to the Board that Mr. Aldaz was working without a license.

---

[14] *New Castle County v. Chrysler Corp.,* 681 A.2d 1077, 1081 (Del. Super. 1995).
[15] *Vincent v. Eastern Shore Markets*, 970 A.2d 160, 164 (Del. 2009).  *See also Carousel Studio v. Unemployment Ins. Appeal Bd.,* 1990 WL 91108, at *1 (Del. Super. June 26, 1990).
[16] Complaint. D.I. 15 at Tab E.
[17] *Id.*

16. This Court finds that Mr. Kirk was fairly on notice of the allegations against him, as demonstrated by the strong defense presented by his counsel. Although the factual findings went against him that does nothing to undermine the basic fairness of the process by which those findings were made.

Having found that Kirk's due process rights were not violated and that the Hearing Examiner's fact findings adequately established in the record, the Court affirms the decision of the Board.

**IT IS SO ORDERED.**

Judge Charles E. Butler