# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DELSURE HEALTH INSURANCE, INC., Appellant,

v.

THE DELAWARE DEPARTMENT OF INSURANCE, Appellee.

)
)
)
)
)
)
)
)
)
)
)

C.A. No.: N19A-11-009 VLM
(Consolidated)

## MEMORANDUM OPINION

Submitted: April 12, 2022
Decided: July 7, 2022

*Upon Consideration of Appellant's Appeal from*
*Decision of Delaware Department of Insurance,*

### AFFIRMED.

Bernard G. Conaway, Esquire, Conaway-Legal LLC, Wilmington, Delaware.
*Attorney for Appellant.*

Kathleen P. Makowski, Deputy Attorney General, Wilmington, Delaware.
*Attorney for Appellee.*

**MEDINILLA, J.**

# I. INTRODUCTION

Appellant Delsure Health Insurance, Inc. ("Delsure"), appeals a decision of the Delaware Insurance Commissioner (the "Commissioner") who found that Appellee Delaware Department of Insurance (the "Department") properly exercised its statutory authority under 18 *Del. C.* § 519(a)(3) when it revoked Delsure's Certificate of Authority (the "Certificate") to "transact the business of . . . [h]ealth insurance within the State of Delaware."[1]  For the reasons set forth below, upon consideration of the arguments, submissions of the parties, and the record in this case, the Commissioner's decision is **AFFIRMED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Delsure was formed for the purpose of providing health insurance to residents of the state of Delaware.[2]  On October 15, 2018, the Department issued the Certificate to Delsure, authorizing Delsure to conduct business under 18 *Del. C.* § 903[3] as a "stock insurer."[4]  The following day, Delsure was informed that it was authorized "to transact insurance business" in Delaware but that it was not permitted to "conduct Delaware transactions until the policies, rate forms, and related

---

[1] *See* Record, Exhibit 10:14, Certificate of Authority dated October 15, 2018 [hereinafter Certificate].

[2] Record, Exhibit 11, Transcript of December 4, 2019 Hearing, at 16:9-14 [hereinafter Hearing Transcript].

[3] *See* 18 *Del. C.* § 903 (defining health insurance coverage).

[4] *See* Certificate.

documents ha[d] been filed . . . and the producers ha[d] been properly licensed."[5]

Delsure has never been allowed to sell health insurance in Delaware.[6]

To transact in health insurance, an insurer is required to maintain a minimum capital and surplus totaling $450,000.[7] On October 19, 2018, Delsure possessed a combined capital and surplus total of $546,856.[8] Because the excess surplus had a limited amount of $96,856, the Department required Delsure to "file statutory monthly financial statements" with the Department to ensure Delsure maintained sufficient levels of capital and surplus.[9]

Delsure's December 2018 financial statement reported a deficient balance.[10] In February 2019, the Department approved Delsure's request to make an additional capital contribution of $172,000,[11] allowing Delsure to remain compliant on its 2018 Annual Statement.[12] The Department notified Delsure on May 6, 2019, that Delsure's finances were again deficient.[13] The Department specifically found that

---

[5] Record, Exhibit 10:106, Cover Letter dated October 16, 2018.
[6] *See* Hearing Transcript, at 42:7-8.
[7] *See* 18 *Del. C.* § 511(a).
[8] Record, Exhibit 10:15, Letter from Department dated October 19, 2018. The letter also reiterates Delsure has been granted authority "to write health insurance."
[9] *Id.*
[10] Record, Exhibit 10:17, December 2018 Unaudited Financial Statement (showing total capital and surplus amount of $413,630).
[11] Record, Exhibit 10:24, Letter from Department dated February 22, 2019.
[12] *See id.*; Record, Exhibit 10:25, Annual Statement for the Year Ended December 31, 2018.
[13] *See* Record, Exhibit 10:28, Letter from Department dated May 6, 2019.

Delsure's monthly financial statements for February 2019[14] and March 2019[15] showed "the company's capital and surplus amounts [were] below the minimum capital surplus amount for a health insurer."[16] The Department also required a plan from Delsure to ensure future compliance with capital and surplus requirements.[17] An additional letter delivered on May 22, 2019, reminded Delsure of the deficiency and provided a 30-day deadline to comply with the requirements.[18]

Delsure responded on June 24, 2019, reporting that additional funds of $129,000 had been arranged through a purchase agreement, with $115,000 of the funds already received.[19] Delsure reported that the remainder was expected to be received the following day.[20] Unfortunately, Delsure failed to provide receipt of these additional funds. Accordingly, the Department revoked Delsure's Certificate on June 26, 2019.[21]

Upon revocation, Delsure requested a hearing.[22] On December 4, 2019, a hearing was conducted before The Honorable Joshua W. Martin, III (the "Hearing

---

[14] Capital and surplus of $413,487.
[15] Capital and surplus of $388,794.
[16] Record, Exhibit 10:28, Letter from Department dated May 6, 2019.
[17] *Id.*
[18] Record, Exhibit 10:29, Letter from Department dated May 22, 2019.
[19] Record, Exhibit 10:30, Email from Delsure dated June 24, 2019, at 1.
[20] *Id.*
[21] *See* Record, Exhibit 10:127, Order Revoking COA and Cover Letter dated June 26, 2019.
[22] Appellant's Opening Brief, D.I. 54, at 5 [hereinafter Appellant's Opening Brief].

Officer").[23]  Both the Department and Delsure were represented by counsel and presented evidence as well as pre-hearing and post hearing briefs.[24]  On February 19, 2020, the Hearing Officer issued a Proposed Order Pursuant to 29 *Del. C.* § 10126 and recommended[25] that the Department and the Commissioner issue an order that the Department possessed the statutory authority to revoke Delsure's Certificate.[26]  In a Final Decision and Order ("Final Order") dated June 22, 2020, this recommendation was accepted by the Commissioner.[27]

On September 19, 2021, Delsure filed this appeal.[28]  The Department filed its response on November 19, 2021.  The matter was assigned to this Court on December 15, 2021.  Oral arguments were heard on March 30, 2022.  A letter from Delsure was submitted as "Clarification Regarding Oral Argument" on April 11, 2022.[29]  The Department objected to its submission on April 12 as inappropriate, procedurally defective, and substantively wrong.[30]  The matter is ripe for decision.

---

[23] The Honorable Joshua W. Martin, III was appointed by Deputy Commissioner Tanisha Merced as the hearing officer for this matter by Order dated September 25, 2019.

[24] Record, Exhibit 17, Final Decision and Order by the Honorable Trinidad Navarro dated June 22, 2020, at 1 [hereinafter Final Order].

[25] John Tinsley, Commissioner's Special Deputy for Examinations also recommended revocation of the Certificate.  *See* Record, Exhibit 16, Proposed Order by The Honorable Joshua W. Martin, III dated February 19, 2020, at 4 [hereinafter Hearing Officer Proposed Order].

[26] *See id.* at 11.

[27] *See* Final Order.

[28] This appeal has been consolidated with a previous appeal which has been stayed pending resolution of the present matter.

[29] *See* Letter from Delsure, D.I. 62.

[30] *See generally* Letter from Department, D.I. 63.

## III.   STANDARD OF REVIEW

On an appeal from an agency, the Superior Court does not ". . . weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[31]   This Court's review is limited to correcting errors of law and a determination of whether substantial evidence[32] in the record supports the agency's decision.[33]   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[34] Questions of law are reviewed *de novo*.[35]   Absent an abuse of discretion or an error of law, the agency's decision must be affirmed.[36]

## IV.   PARTY CONTENTIONS

Delsure contends the Commissioner erred when it issued its Final Order and concluded that the Department possessed the legal authority to revoke its Certificate under 18 *Del. C.* §§ 511(a) and 519(a)(3).  It argues statutory interpretation supports

---

[31] *Christiana Care Health Servs. v. Davis*, 127 A.3d 391, 394 (Del. 2015); *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[32] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (Substantial evidence constitutes relevant evidence that a reasonable person "might accept as adequate to support a conclusion.").

[33] *Maracle v. Int'l Game Tech*, 2010 WL 541199, at *2 (Del. Super. Feb. 1, 2010); *Histed v. E.I. Du Pont de Nemours & Co*., 621 A.2d 340, 342 (Del. 1993); *Johnson*, 213 A.2d at 66; *Lecompte v. Christiana Care Health Sys*., 2002 WL 31186551, at *2 (Del. Super. Oct. 2, 2002) (citing 29 *Del. C.* § 10142(d)) (The Superior Court determines whether the record "is legally adequate to support the Board's findings.").

[34] *Olney*, 425 A.2d at 614.

[35] *See Johnson Controls, Inc. v. Fields*, 758 A.2d 506, 509 (Del. 2000) (citing *E.I. Du Pont De Nemours & Co., Inc. v. Shell Oil Co.,* 498 A.2d 1108, 1113 (Del. Super. 1985)).

[36] *See Public Water Supply Co. v. DiPasquale*, 735 A.2d 378, 381 (Del. 1999).

a finding that it was not authorized to sell insurance and was only required to maintain a minimum capital of $300,000.[37] Therefore, the Department was not authorized to require Delsure to maintain an additional free surplus where its deficiency never fell below the required minimum capital stock of $300,000.[38] It further asserts that the Department's deficiency notices were statutorily defective under 18 *Del. C.* § 4927 because the notices did not identify the amount of the deficiency.[39]

The Department maintains it possessed the requisite statutory authority to revoke Delsure's Certificate.[40] It also claims Delsure was authorized to and did transact insurance business in Delaware.[41] Finally, the Department claims that Delsure's argument with respect to notices under 18 *Del. C.* § 4927 is not properly before the Court.[42]

## V. DISCUSSION

### A. *Statutory Interpretation Proper*

What led to the ultimate revocation of Delsure's Certificate was that it failed to meet minimum capital and surplus statutory requirements. Under 18 *Del. C.* §

---

[37] Appellant's Opening Brief, at 10.
[38] *Id.* at 4.
[39] *Id.* at 22.
[40] Responsive Brief of Appellee, The Delaware Department of Insurance, D.I. 56, at 13.
[41] *Id.*
[42] *Id.*

519(a)(3), the Commissioner is required to suspend or revoke a certificate of authority "[i]f a domestic insurer . . . has failed to cure an impairment of capital or surplus within the time allowed therefor by the Commissioner . . . or is otherwise no longer qualified . . . ."[43] Such suspension or revocation is mandatory.

Delsure obtained a hearing that challenged the Department's authority to revoke. Delaware law provides that when a hearing is conducted by an agency "[t]he burden of proof shall always be upon the applicant or proponent."[44] Delsure failed to meet its burden that the revocation was improper, in part, based upon the Commissioner's determination that "Delsure, as a stock insurer [was] subject to the requirements of $300,000 of capital stock *and* $150,000 of free surplus pursuant to § 511(a)."[45] Delsure challenges the commissioner's interpretation of the relevant statutory provisions.[46]

Rules of statutory interpretation are well-established under Delaware law.[47] A statute is ambiguous "if it is 'reasonably susceptible of two interpretations or if a literal reading of the statute would lead to an unreasonable or absurd result not

---

[43] 18 *Del. C.* § 519(a)(3).

[44] 29 *Del. C.* § 10125(c).

[45] Hearing Officer Proposed Order, at 6 (emphasis added).

[46] The Commissioner adopted and incorporated the Hearing Officer's recommendation, findings of fact, and conclusions of law into the Final Order. Accordingly, this Court will refer to such findings and conclusions of the Hearing Officer as if they were that of the Commissioner.

[47] *See, e.g., Delaware Bd. of Nursing v. Gillepsie*, 41 A.3d 424, 427 (Del. 2012); *Dewey Beach Enters., Inc. v. Bd. of Adjustment of Dewey Beach*, 1 A.3d 305, 307 (Del. 2010).

8

contemplated by the legislature.'"[48] If the statute is not ambiguous, the Court should apply the plain meaning of the statutory term which is determined "by considering the term in a common or ordinary way."[49] When considering an agency's interpretation on appeal, "[a] reviewing court may accord due weight, but not defer, to an agency interpretation of a statute administered by it."[50] Greater weight should be accorded when reviewing a technical definition of an agency bearing technical expertise or "an agency interpretation [that] is longstanding and widely enforced."[51]

So here the claim of error is based upon the statutory interpretation of a specific comma under § 511(a) and the definitional language of "authorized" and to "transact insurance" under 18 *Del. C.* §§ 102(a)(2) and 103, respectively.

First, Delsure's argument rests on two separate clauses under 18 *Del. C.* § 511(a):

> To transact any 1 kind of insurance . . . an insurer shall possess and thereafter maintain in cash or cash equivalents unimpaired paid-in capital stock . . . or a capital account . . . or unimpaired basic surplus . . . **, and when first so authorized shall possess free surplus, all in amounts not less than as follows**.[52]

---

[48] *Delaware Tech. and Cmty. College v. State of Delaware Human Relations Comm'n*, 2017 WL 2180544, at *2 (Del. Super. May 17, 2017) (quoting *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011)).
[49] *See id.*
[50] *DiPasquale*, 735 A.2d at 382.
[51] *Id.* at 382 n.8.
[52] 18 *Del. C.* § 511(a) (emphasis added).

In essence, Delsure argues that reversal is warranted because of a comma. Specifically, that "the last phrase of § 511(a) uses a serial comma and coordinating conjunction – 'and' – to tie together the two different account types."[53] Accordingly, Delsure claims that this comma serves as "recognition that the capital and surplus accounts are treated differently,"[54] and the language that follows this comma "relates solely to the surplus account."[55]

Delsure argues the factual record lends further support for its position. It does not dispute that the Department issued the Certificate authorizing it to conduct business under 18 *Del. C.* § 903[56] as a "stock insurer" on October 15, 2018.[57] But the next day, although it was authorized "to transact insurance business," the Department further advised Delsure that it was not permitted to "conduct Delaware transactions until the policies, rate forms, and related documents ha[d] been filed. . . and the producers ha[d] been properly licensed."[58] Due to these directives, Delsure suggests that a reading of the law confirms that because it was not "first so authorized" to sell insurance, it was not required to maintain a free surplus minimum under § 511(a).

---

[53] Appellant's Opening Brief, at 12.
[54] *Id.* at 13.
[55] *Id.*
[56] *See* 18 *Del. C.* § 903 (defining health insurance coverage).
[57] *See* Certificate.
[58] Record, Exhibit 10:106, Cover Letter dated October 16, 2018.

For support, Delsure also cites to *Levinson v. First Delaware Insurance Company.*[59]  In *Levinson*, our Supreme Court found that a Commissioner could not exercise discretion when he denied a certificate of authority to a new insurer who exceeded the capital and free surplus requirements under § 511.[60]  The *Levinson* Court distinguished between the mandatory initial minimum capital requirements for issuance of a certificate of authority under § 511(a) and the Commissioner's discretionary authority under § 511(a)(2) to adjust maintenance amounts after licensure.[61]

The Commissioner properly determined that the proposed interpretation of § 511 was incorrect and violative of the objective of the statute; the financial stability of insurers.[62]  He properly interpreted § 511 to read that *both* capital and surplus minimums are required prior to being allowed to transact insurance and preservation of both funds is required to maintain a certificate of authority.[63]  The Commissioner further considered and rejected Delsure's reliance on *Levinson.*[64]  Delsure's

---

[59] 549 A.2d 296 (Del. 1988).
[60] *Id.* at 299.
[61] *See id.*
[62] Hearing Officer Proposed Order, at 7.
[63] *Id.*
[64] *See id.* Notably, this Court finds *Levinson* distinguishable.  Here, Delsure had already been issued the Certificate.  The issue here addressed the validity of the Department's authority to revoke, not the Commissioner's discretionary authority to adjust maintenance amounts under § 511(a)(2).  This case involves revocation, not issuance.  Therefore, any interpretation under *Levinson* dealt with separate and distinct issues not currently before this Court.

11

interpretation "would allow an insurer to only meet the required minimums and not maintain them" which "is in direct contravention of the objectives of the statute."[65] Required minimums are just that—required.

Delsure argues further that it was not required to maintain a free surplus because it was not authorized to transact insurance. This argument is unavailing. Under 18 *Del. C.* § 102(a)(2) "[a]n "authorized" insurer is one duly authorized to *transact insurance* in this State by a subsisting certificate of authority issued by the Commissioner."[66] A plain reading of § 102(a)(2) suggests that once Delsure received the Certificate it was authorized to transact insurance within Delaware. Yet, Delsure maintains that under 18 *Del. C.* § 103, it did not meet the definition to "transact insurance" provided under the law's four statutory factors.[67]

The Commissioner properly determined that Delsure's reading of § 103 was too narrow, and that Delsure was transacting insurance. It found that Delsure failed to consider that a business can transact insurance through "solicitation or inducement" under § 103 and such a finding was not limited to activities of issuing

---

[65] *Id.*

[66] 18 *Del. C.* § 102(2) (emphasis added).

[67] *See* 18 *Del. C.* § 103 ("In addition to other aspects of insurance operations to which provisions of this title by their terms apply, "transact" with respect to a business of insurance includes any of the following: (1) Solicitation or inducement; (2) Negotiations; (3) Effectuation of a contract of insurance; (4) Transaction of matters subsequent to effectuation and arising out of such a contract.").

policies.[68] He set forth examples of Delsure's activities that fell within the definition of "transacting insurance" defined under § 103. This included submitting various forms on the System for Electronic Rates and Forms Filing ("SERFF,") which could only be performed by a licensed insurer, maintaining a website "which offers a product line of insurance products," and soliciting visitors to its website to contact Delsure about those products.[69] The Commissioner also noted that Delsure's activities satisfied § 103's language of transacting insurance under its catch-all provision.[70]

In considering the Commissioner's interpretation on appeal, this Court accords due weight and finds no error of law or abuse of discretion. On *de novo* review, this Court finds the Commissioner's statutory interpretation of 18 *Del. C.* §§ 511(a) and 103 proper. The serial comma does not change the statutory requirements under § 511(a). Delsure engaged in "solicitation or inducement" defined under § 103 and was transacting insurance in Delaware. As such, Delsure was required to maintain both a capital stock minimum of $300,000 and a free surplus minimum of $150,000. Therefore, the Department possessed the legal authority to revoke its Certificate under 18 *Del. C.* § 519(a)(3).

---

[68] Hearing Officer Proposed Order, at 8.
[69] *See id.*
[70] *See* 18 *Del. C.* § 103 (providing the four statutory factors are "[i]n addition to other aspects of insurance operations to which provisions of this title by their terms apply . . . .").

## B. The Commissioner's Decision is Supported by Substantial Evidence

Delsure's final argument is that it timely cured any deficiency. In finding against Delsure, the Commissioner properly determined that "Delsure did not provide documentation that the impairment of capital and surplus was cured within the time allowed."[71] Substantial evidence was presented in support.

On May 22, 2019, the Department notified Delsure by letter that the company was deficient for both the months of February and March 2019.[72] Receipt of this letter is not disputed. Delsure was given "thirty (30) days from the date of this letter" to add funds necessary to be "above the minimum capital and surplus level."[73] As stated by the Commissioner, Delsure remained deficient on June 24, 2019, when it wrote to the Department of its plans to become compliant. Delsure explicitly stated in this letter that "[p]roof of receipt will be sent after the final amount is received."[74] Delsure did not provide proof of compliance within the 30-day deadline as required by the Department's May 22, 2019, letter. As of June 26, 2019, when the Certificate was revoked, such proof still had not been provided.[75]

Lastly, the Commissioner rejected Delsure's argument that it was not obligated to provide evidence of compliance to the Department. The Commissioner

---

[71] Final Order, at 2.
[72] *See id.*; Hearing Officer Proposed Order, at 8–9.
[73] Record, Exhibit 10:29, Letter from Department dated May 22, 2019.
[74] Record, Exhibit 10:30, Email from Delsure dated June 24, 2019, at 1.
[75] Hearing Transcript, 302:16-23.

found that the mere addition of funds without providing proof to the Department was insufficient and untimely.[76] Where the Department notified Delsure that proof of compliance was required by the deadline,[77] the Commissioner determined also that any other interpretation by Delsure "would have been unreasonable."[78] This Court agrees.

For the reasons stated, substantial evidence exists on the record that Delsure was notified of the deficiency and provided a timeframe to cure the deficiency. It failed to provide proof of cure to the Department within the allotted time and did not cure as required. Its revocation is valid under 18 *Del. C.* § 519(a)(3).

### C. *Appellant's Argument Related to Deficiency Notices is not Properly before this Court*

It is well-established under Delaware law that a Court cannot consider an issue on appeal where that same issue was not raised in the lower tribunal.[79] Delsure raises the argument of statutorily defective deficiency notices as to the amount of the deficiency for the first time in its Opening Brief.[80] No such argument exists in the

---

[76] Hearing Officer Proposed Order, at 8–9.
[77] *Id.*; *see also* Record, Exhibit 10: 29, Letter from Department dated May 22, 2019 ("The Delaware Insurance Department is requiring additional funds be added to the company. . . within thirty (30) days from the date of this letter.").
[78] Hearing Officer Proposed Order, at 9.
[79] *See, e.g.*, *Equitable Trust Co. v. Gallagher*, 77 A.2d 548, 550 (Del. 1950); *Pfeiffer v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 7062498, at *8 (Del. Super. Dec. 20, 2011).
[80] *See* Appellant's Opening Brief, at 22.

record below.[81]  Delsure's nuanced argument relating to the amount of a deficiency under 18 *Del. C.* § 4927 is distinct from its argument below relating to cure notice under the same statute.  Because Delsure failed to raise this argument below, the argument is waived and will not be considered by this Court.

## CONCLUSION

The rules of statutory interpretation support the Commissioner's Final Order that Delsure failed to cure its deficiency and the Department possessed the statutory authority to revoke Delsure's Certificate under 18 *Del. C.* §§ 511(a) and 519(a)(3). The Commissioner's Final Order is supported by substantial evidence in the record. The Commissioner did not abuse his discretion and there is no error of law.  The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

---

[81] *See* Record, Exhibit 6, Delsure Letter Brief on Scope and Discovery Issues dated November 7, 2019; Record, Exhibit 9, Pre-Hearing Position Paper by Delsure Dated November 27, 2019; Hearing Transcript; Record, Exhibit 13, Delsure's Post-Hearing Opening Brief.